Filed 12/15/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SAJID VEERA et al., | B270796 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC541146) |
| v. | |
| BANANA REPUBLIC, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Shepard Wiley, Jr., Judge.  Reversed and remanded.

Jones, Bell, Abbott, Fleming & Fitzgerald, William M. Turner, Asha Dhillon; Grignon Law Firm, Anne M. Grignon and Margaret M. Grignon for Plaintiffs and Appellants.

Morrison & Foerster, David F. McDowell and Miriam A. Vogel for Defendant and Respondent.

Plaintiffs Cherilyn DeAguero, Sean Bose, and Rakhee Bose filed a putative class action against Banana Republic, LLC, a clothing and accessories retailer with stores throughout California, alleging that signs in Banana Republic store windows advertising a 40 percent off sale were false or misleading because they did not disclose that the discount applied only to certain items. Plaintiffs alleged causes of action under the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (UCL), the False Advertising Law (Bus. & Prof. Code, § 17500 et seq.) (FAL)[1] and the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) (CLRA). In opposition to Banana Republic's summary judgment motion, plaintiffs produced evidence that in reliance on the allegedly false advertising, they were lured to shop at certain Banana Republic stores and selected various items for purchase at the advertised discount. However, as the items were being rung up at the cash register, plaintiffs were told for the first time that the advertised discount did not apply to their chosen merchandise. Having waited in line to purchase the selected items, and out of frustration and embarrassment, they ultimately bought some (but not all) of the items they chose even though the discount did not apply. The trial court granted summary judgment in favor of Banana Republic, concluding that plaintiffs lacked standing because they failed to raise a triable issue whether they suffered injury in fact and lost money or property. In this appeal by plaintiffs, we conclude that neither the ground cited by the trial court, nor the other grounds raised in Banana Republic's motion, support summary judgment. Instead, we conclude that on the evidence presented, plaintiffs raised a triable issue whether they lost "money or property sufficient to

_____

[1] Undesignated statutory cites are to the Business and Professions Code.

2

qualify as injury in fact, i.e., *economic injury*," and whether "that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322 (*Kwikset*).) Therefore, we reverse the judgment.

## BACKGROUND

### I. *The Complaint*

As here relevant, plaintiffs alleged that they were lured to shop at Banana Republic stores (DeAguero in November 2010, the Boses in December 2011) by store window signs advertising a discount of 40 percent off purchases, with no apparent limit. Though they would not have entered the store but for the advertised discount, they ultimately purchased some (but not all) of their selected items after being informed by a store clerk at the cash register that none of the items they wished to purchase were on sale. They alleged that they had been damaged in the amount they overpaid for the items they bought, and that Banana Republic's deceptive advertising violated the FAL, UCL, and CLRA.

### II. *Banana Republic's Motion for Summary Judgment*

In support of its summary judgment motion, Banana Republic submitted a declaration by a project manager, Debbie Cotton. Cotton described the various promotions offered at Banana Republic stores in December 2011. She explained that Banana Republic employees were instructed about which merchandise was excluded from the promotions and were given handouts to provide to customers about the promotions. According to Cotton, there were no 40 percent off promotions in any Banana

3

Republic stores in California on November 7, 2010, the date DeAguero alleged she saw the sign.

Banana Republic attached copies of the handouts, the display easels (freestanding signs) and the so-called "window clings" that stores were instructed to display to advertise the various promotions in December 2011. Banana Republic also attached a copy of the displays of Banana Republic store windows on November 7, 2010.

Banana Republic moved for summary judgment on three grounds: (1) plaintiffs could not establish they suffered injury as a result of the allegedly misleading advertising; (2) the signs were not misleading, and (3) plaintiffs were not entitled to injunctive relief because plaintiffs did not know whether Banana Republic continued to engage in the contested conduct.

## III.   *Plaintiffs' Opposition*

In opposition to summary judgment, plaintiffs produced the following evidence.

### A. *Cherilyn DeAguero*

Cherilyn DeAguero testified in her deposition that on November 7, 2010, she and her 14-year-old daughter were driving past a Banana Republic store on Ventura Boulevard in Studio City.  DeAguero saw a large red sign in the store window stating in black letters "40 percent off."  She pointed it out to her daughter, and they decided to stop and go shopping.  Based on the 40 percent off discount, DeAguero thought she would be able to buy six to eight outfits for her daughter, who required a variety of outfits for auditions in her acting career.

4

As they entered the store, DeAguero saw another sign on a stand. This sign also was red and stated "40 percent off" in black lettering. DeAguero did not recall if the sign said anything else. She did not recall seeing any signs inside the store while they were shopping, other than one advertising "New arrivals."

After shopping and trying on outfits for approximately 40 minutes, DeAguero's daughter chose eight pieces and wore one new outfit out of the dressing room. They went to the register, and the sales clerk began ringing up the items. DeAguero was talking excitedly with the customer behind her, stating "This is great, 40 percent off." The clerk told her the items she was purchasing were not 40 percent off. DeAguero replied that the sign indicated everything was 40 percent off, but the clerk said the discount did not apply to the items she chose.

DeAguero became embarrassed, noticing that the line behind her was getting long. She found the experience "humiliating," because she was trying to remain in a budget but did not want to make her daughter return to the dressing room to remove the outfit she was wearing.

She became angry and asked the clerk why the store had "waste[d] [her] time luring [her] in" and which items were 40 percent off. The clerk explained that there were "selected items" throughout the store, even though DeAguero did not see any signs in the store indicating those items.

DeAguero did not ask to speak with a manager because her daughter was embarrassed and was whispering to stop. She ultimately purchased the new items her daughter was wearing because she did not want to embarrass her. She did not buy the other items because they were not 40 percent off.

B. *The Boses*

Plaintiffs Sean and Rakhee Bose testified in their depositions that in December 2011, they were shopping at the Dos Lagos mall in Corona.[2] They saw red signs containing the words "sale" and "40 percent off" in the windows of the Banana Republic store. The signs were large, covering most of the windows' glass. Sean noticed a smaller sign stating "discount," "sale," and "40 percent off," on a stand at the entrance of the store. He stated in his deposition that there were no other words on the smaller sign. He did not recall if any Banana Republic employees were handing out flyers. Rakhee did not recall if there was either a sign at the entrance or employees handing out flyers.

Sean and Rakhee entered the store and began shopping. They both tried on clothes, selected some items to purchase, and took them to the register to pay. When the sales clerk began ringing up their items, the total seemed too high, so they asked her about the 40 percent discount. The clerk explained that the discount did not apply to everything in the store. They began to argue with her, pointing out that the signs did not state that the discount applied only to certain items.

Rakhee told Sean, "Let's not cause a scene, and let's go." According to Sean, there were at least 15 people in line and he was annoyed and very embarrassed. He ultimately purchased one item (a sweater) because "we had invested all that time and effort, and just to leave with nothing would be a complete and utter waste of energy and time." They did not purchase any

---

[2]     In order to distinguish between Sean Bose and Rakhee Bose, we refer to them by their first names when necessary.

other items.  They did not ask to speak to a manager or call Banana Republic to complain.

IV.    *Ruling*

The trial court granted Banana Republic's summary judgment motion on the ground that plaintiffs failed to establish any economic injury, reasoning that "[l]ost shopping time" was not "money or property" as required to confer standing.

## DISCUSSION

Plaintiffs contend that none of the grounds raised in Banana Republic's motion justified summary judgment.  For reasons explained below, we agree.

I.    *Standard of Review*

"A court may grant a summary judgment only if there is no triable issue of material fact and the moving party is entitled to judgment in its favor as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense.  [Citation.]  The defendant can satisfy its burden by presenting evidence that negates an element of the cause of action or evidence that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to establish an essential element.  [Citation.]  If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact.  [Citation.]  [¶]  We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts

7

concerning the evidence in favor of the opponent.  [Citation.]"  (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 180–181.)

II.    *Statutory Framework*

Before considering the merits of the issues presented, we briefly review the statutes underlying plaintiffs' three causes of action, and the requirement of standing.

A.    *UCL and FAL*

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice [and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL].' (§ 17200.)  Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' [Citations.]" (*Kwikset, supra,* 51 Cal.4th at p. 320.)

"The [FAL] generally prohibits advertising that contains 'any statement . . . which is untrue or misleading, and which is known, or . . . should be known, to be untrue or misleading . . . .' (. . . § 17500.) . . . [¶] The UCL and the [FAL] 'prohibit "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." [Citation.] Thus, to state a claim under either the UCL or the [FAL], based on false advertising or promotional practices, "it is necessary only to show that 'members of the public are likely to be deceived.'" [Citations.]' [Citation.]" (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 226; see also *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 312 (*Tobacco II*).)

8

"The remedies available in a UCL or FAL action are generally limited to injunctive relief and restitution. [Citation.]" (*Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 631; see *Kwikset*, *supra*, 51 Cal.4th at p. 337 ["Injunctions are 'the primary form of relief available under the UCL to protect consumers from unfair business practices,' while restitution is a type of 'ancillary relief.'"]; §§ 17203, 17535.)

B.    *CLRA*

"The CLRA makes unlawful, in Civil Code section 1770, subdivision (a) . . . , various 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.'" (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 639.)  In contrast to the UCL and FAL, the remedies under the CLRA include not only injunctive relief and restitution, but also actual damages and punitive damages.  (Civ. Code, § 1780, subd. (a).)

The CLRA sets forth 27 proscribed acts or practices.  (Civ. Code, § 1770, subd. (a)(1)-(27).)  In the present case, the complaint alleged Banana Republic engaged in three of those unlawful practices:  (1) "[a]dvertising goods or services with intent not to sell them as advertised" (Civ. Code, § 1770, subd. (a)(9)); (2) "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions" (Civ. Code, § 1770, subd. (a)(13)); and (3) "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" (Civ. Code, § 1770, subd. (a)(14)).

9

C.    *Standing Requirements*

Proposition 64, passed by California voters in 2004, amended the UCL's and FAL's standing requirements for private actions for relief.  (*Kwikset, supra,* 51 Cal.4th at p. 320; *Tobacco II, supra,* 46 Cal.4th at p. 314.)  "'[N]ow private standing is limited to any "person who has suffered injury in fact and has lost money or property" as a result of unfair competition'" or false advertising.  (*Kwikset, supra,* 51 Cal.4th at pp. 320-321; §§ 17204, 17535.)  "'The phrase "as a result of" in its plain and ordinary sense means "caused by" and requires a showing of a causal connection or reliance on the alleged misrepresentation.'  [Citations.]  . . .  [¶]  However, a 'plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct.'  [Citation.]"  (*Kwikset, supra,* 51 Cal.4th at pp. 326-327.)

Thus, in order to establish standing under the UCL and the FAL, a private party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."  (*Kwikset, supra,* 51 Cal.4th at p. 322; §§ 17204, 17535.)  "[T]his standing requirement applies only to the named plaintiffs in a class action [citation] . . . ."  (*Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1257.)  "[T]he quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact; [which] . . . is not a substantial or insurmountable hurdle . . . .  [Citation.]"  (*Kwikset, supra,* 51 Cal.4th at p. 324.)

For purposes of this appeal, plaintiffs concede that the standing requirements of the CLRA are essentially identical to those of the UCL and

10

FAL.  We therefore consider the standing requirements under all three statutes together.[3]

III.  *Analysis*

In granting summary judgment, the trial court agreed with Banana Republic that plaintiffs failed to satisfy the economic injury prong of the standing requirements – that is, they failed to produce evidence showing they lost money or property.  On appeal, in addition to relying on that ground, Banana Republic reprises its argument that plaintiffs also failed to raise a triable issue of causation.  Reduced to their essence, these grounds rest on the premise that plaintiffs cannot demonstrate economic injury or causation because they made their purchases after they learned the 40 percent discount did not apply to the items they had chosen.  For several reasons, we disagree.

First, we find our prior decision in *Medrazo v. Honda of North Hollywood* (2012) 205 Cal.App.4th 1 (*Medrazo*), instructive on the issues of injury in fact and economic harm.  In *Medrazo*, the plaintiff introduced evidence showing that the defendant dealership offered motorcycles for sale without complying with certain sections of the Vehicle Code that require a motorcycle dealer to disclose dealer-added costs on tags hung on motorcycles available for purchase.  The plaintiff testified that along with her boyfriend,

---

[3]     We note only that the CLRA does not require lost injury or property, but does require damage and causation.  "Under Civil Code section 1780, subdivision (a), CLRA actions may be brought 'only by a consumer "who suffers any damage as a result of the use or employment" of a proscribed method, act, or practice. . . .  Accordingly, "plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm."'" [Citation.]" (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1386, italics deleted; Civ. Code, § 1780, subd. (a).)

she discussed the price of a particular motorcycle with the salesman, saw no tag on that motorcycle or any other, and was not informed of the destination charges and total price until she was presented with the sales contract, which she agreed to sign. She made payments for the first two months under the contract, and owed more than $12,000.

The plaintiff sued, asserting claims under the UCL and the CLRA arising from the failure to display a hanger tag disclosing the total cost of the motorcycle she bought. The trial court, after hearing evidence in a bench trial, granted the defendant's motion for judgment. As pertinent here, the trial court concluded that because the plaintiff was informed of the dealer-added charges before she signed the purchase contract, she was not misled by the alleged failure to display hanger tags, and suffered no injury as a result of it. Thus, she lacked standing. (*Medrazo, supra*, 205 Cal.App.4th at p. 9.)

In reversing, we explained: "[T]he amended UCL requires a plaintiff to establish that he or she 'has suffered injury in fact and has lost money or property as a result of the unfair competition.' [Citation.] Thus, the plaintiff must establish both injury in fact and 'some form of economic injury' that has a causal connection to the unfair competition. [¶] Our Supreme Court has explained that 'injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, [citations]; and (b) 'actual or imminent, not "conjectural" or "hypothetical,"' [citation]." [Citations.] "Particularized" in this context means simply that 'the injury must affect the plaintiff in a personal and individual way." [Citation.]' [Citing *Kwikset, supra*, 51 Cal.4th at pp. 322–323.] The court emphasized that 'injury in fact is not a substantial or insurmountable hurdle . . . . [Citation.] Rather, it suffices . . . to "'allege[] some specific, "identifiable trifle" of injury."'

12

[Citations.]' [Citation.] [Citing *Kwikset, supra,* 51 Cal.4th at pp. 324–325.]" (*Medrazo, supra*, 205 Cal.App.4th at pp. 12-13.)

Under this standard, we concluded that the plaintiff "presented evidence of injury in fact. She presented evidence that there was no hanger tag showing the dealer-added charges for the motorcycle that she and her boyfriend were interested in purchasing, and that she was not informed of the dealer-added charges or the total price of the motorcycle until she was presented with the sales contract. This evidence is sufficient to establish that she suffered a concrete, particularized, and actual invasion of an interest legally protected by [Vehicle Code] section[s] 11712.5 and . . . 24014, i.e., the disclosure—before a decision to purchase a specific motorcycle is made—of the MSRP and any dealer-added charges for all new motorcycles offered for sale." (*Medrazo, supra*, 205 Cal.App.4th at p. 13, fn. omitted.)

By analogy to *Medrazo*, plaintiffs' evidence raised a triable issue whether plaintiffs suffered injury in fact. The UCL prohibits "unfair, deceptive, untrue or misleading advertising," and any act prohibited by the FAL. (§ 17200.) The FAL generally prohibits advertising that contains "any statement . . . which is untrue or misleading, and which is known, or . . . should be known, to be untrue or misleading . . . ." (§ 17500.) The CLRA prohibits, inter alia, "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." (Civ. Code, § 1770, subd. (a)(13).) These provisions are designed in part to protect consumers such as plaintiffs by requiring businesses to disclose the actual prices of items offered for sale, and prohibiting businesses from using false and deceptive advertising to lure consumers to shop. In short, plaintiffs had a legally protected interest in knowing from the outset, when they started to shop, the true prices of the items they chose to buy. Assuming plaintiffs'

13

version of Banana Republic's advertising occurred, there is a triable issue whether that legally protected interest was violated in the same way as the legally protected interest of the plaintiff in *Medrazo*, who had a right to know dealer-added charges as stated on a required hanger tag when deciding to buy a motorcycle. (*Medrazo, supra*, 205 Cal.App.4th at p. 13.)

We also find *Medrazo* instructive on the issue whether plaintiffs suffered economic harm. In *Medrazo,* we concluded that the plaintiff "presented evidence of an economic injury caused by the alleged unfair competition. She testified that she made the first two months' payments, and owes more than $12,000 on a motorcycle that [the defendant] allegedly was not legally allowed to sell (or at least was not allowed to sell at the price for which it was sold) because it failed to disclose the dealer-added charges on a hanger tag attached to the motorcycle. [¶] In short, the undisputed evidence before the trial court was sufficient to establish that [the plaintiff] 'has suffered injury in fact and has lost money . . . as a result of the [alleged] unfair competition.' [Citation.]" (*Medrazo, supra*, 205 Cal.App.4th at p. 13.)

Similarly here, plaintiffs presented evidence raising a triable issue whether they suffered economic harm. They bought certain items at full price, even though (assuming plaintiffs' evidence of misleading advertising is true) Banana Republic sold those items to them in violation of the UCL, FAL, and CLRA. The economic harm thus suffered is the difference between the advertised price plaintiffs should have been charged, and the full price plaintiffs actually paid. (See *Kwikset, supra*, 51 Cal.4th at p. 325 ["If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact."].)

*Medrazo* has been criticized by some federal district courts because we stated that "an actual reliance requirement does not apply to UCL actions

that are not based upon a fraud theory. [Citation.]" (*Medrazo, supra*, 205 Cal.App.4th at p. 12.) (See, e.g., *Kane v. Chobani, Inc.* (N.D. Cal. 2014) 973 F.Supp.2d 1120, 1131, vacated on other grounds by *Kane v. Chobani, LLC* (9th Cir. 2016) 645 Fed.Appx. 593 ["*Medrazo* contains no discussion of *Kwikset's* statement that the actual reliance requirement applies to claims under the unlawful prong of the UCL where the alleged unlawful conduct is based on a statute that prohibits specific types of misrepresentations."]; *De Keczer v. Tetley USA, Inc.* (N.D.Cal. Aug. 28, 2014, No. 5:12-CV-02409-EJD) 2014 U.S.Dist.LEXIS 121465, at *21-22 [rejecting the plaintiff's reliance on *Medrazo* for "the proposition that no showing of reliance is required where a defendant sells a product that is illegal to sell."].) We agree that in stating that reliance was not required in a UCL action premised on a fraud theory, we went too far in *Medrazo*: when a consumer's theory is that the defendant "engaged in misrepresentations and deceived consumers" (*Kwikset, supra*, 51 Cal.4th at p. 326, fn. 9), the consumer needs to show reliance. (See *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1363 [the reliance requirement "applies equally to the 'unlawful' prong of the UCL when . . . the predicate unlawfulness is misrepresentation and deception."].)

However, in the instant case, the evidence raises a triable issue whether plaintiffs' reliance on the allegedly deceptive advertising resulted in their economic loss. "While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause. ''It is not . . . necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." [Citation.]'" (*Tobacco*

15

*II, supra,* 46 Cal.4th at p. 326.)  In other words, it is enough if a plaintiff shows that "in [the] absence [of the misrepresentation] the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.'  [Citation.]"  (*Ibid.*)

Here, construing plaintiffs' evidence in the light most favorable to their case, there is a triable issue whether, in all reasonable probability, in the absence of the allegedly false advertising, they would have engaged in the injury-producing conduct, i.e., would have bought certain items at full price despite the advertised discount.  According to DeAguero, having been lured by the advertised discount to shop, to select items for her daughter, and to wait in line to purchase them, she became embarrassed because, as she argued with the store clerk about whether the discount applied, the line behind her was getting long.  She felt humiliated because she was trying to remain in a budget but did not want to force her daughter to return to the dressing room to remove the outfit she was wearing, and she was angry at having wasted her time.  She did not ask to speak with a manager because her daughter was embarrassed and was whispering to stop.  So as not to embarrass her daughter, she purchased at full price the new items her daughter was wearing.

Similarly, according to Sean Bose, when he and Rakhee were told at the register that the discount did not apply, he protested.  There were at least 15 people in line and he was annoyed and very embarrassed.  Rakhee told him not to make a scene and to just leave.  He purchased one item (a sweater) because "we had invested all that time and effort, and just to leave with nothing would be a complete and utter waste of energy and time."

On these facts, the question of reliance and causation does not rest as a matter of law on whether plaintiffs knew the actual price of the items they

16

purchased at the moment money was exchanged. To isolate that point in time as solely determinative of reliance and causation ignores the true nature of those elements. If the reliance on the misleading advertising was a substantial factor in causing plaintiff's decision to buy, the requirements of reliance and causation are met. (*Tobacco II, supra,* 46 Cal.4th at p. 326.) Here, in plaintiffs' version of events, the advertising led them to enter the store, to shop, to select items, to decide to purchase them, and to stand in line to make the purchases. Their reliance on the advertising informed their decision to buy, which culminated in the embarrassment and frustration they felt when, as the items were being rung up, they learned that discount did not apply. And it was the temporal proximity of that chain of events, and the pressure the events brought to bear on plaintiffs' judgment, that played a substantial role in leading them to purchase the items they did, even though they knew the discount did not apply. On this reasoning, there is a triable issue whether plaintiffs' reliance on the allegedly misleading advertising was a cause, though not the only cause, of their economic harm.[4]

---

[4] Banana Republic argues that under *Chern v. Bank of America* (1976) 15 Cal.3d 866 (*Chern*), a pre-Proposition 64 decision, plaintiffs cannot show causation, because plaintiffs' knowledge of the price of the items they purchased breaks the chain of causation between the allegedly deceptive advertising and their economic injury. But *Chern* has nothing to do with causation as relevant to plaintiffs' standing.

In *Chern*, the named plaintiff called a bank to arrange a loan and was told the interest rate would be 9 percent. When she arrived at the bank, she was shown a promissory note showing a 9 percent interest rate but also a Federal Truth in Lending Statement showing an interest rate of 9 1/4 percent, based on a different method of calculating the rate. "[A]lthough she protested that the method was dishonest, [she] nevertheless executed the various forms." (*Chern, supra*, 15 Cal.3d at p. 870.) She filed a putative class action alleging breach of contract and misleading statements under the FAL, seeking damages and injunctive relief. The trial court granted summary

17

We also find it pertinent to consider the implication of a contrary result. Plaintiffs' evidence portrays, in essence, a type of "bait and switch" advertising. (See *Hawaii Community Federal Credit Union v. Keka* (2000) 11 P.3d 1, 15 ["[t]he term 'bait and switch' is usually applied in the context of advertising goods or services with the intent not to sell them as advertised"]; Stern, Cal. Practice Guide: Bus. & Prof. Code Section 17200 Practice (The Rutter Group 2016) § 4:35 ["A 'bait and switch' is a form of false advertising in which advertisements may not be bona fide because what the merchant intends to sell is significantly different from that which drew the potential customer in. [Citation.]"].) In such a scheme, one of the dangers is that the consumer will rely on the deceptive advertising to decide to buy merchandise. Then, when the deception is revealed, the consumer, now invested in the decision to buy and swept up in the momentum of events, nonetheless buys at the inflated price, despite his or her better judgment.

If such a scheme is unsuccessful – that is, if the consumer is able to resist the influence of the momentum to buy created by the chain of events flowing from the false advertising – the consumer has no standing to bring a private action under Proposition 64, because the consumer has suffered no economic injury. That result is consistent with the purpose of Proposition 64, which was intended to curb "use [of the UCL] by unscrupulous lawyers who exploited the generous standing requirement . . . to file 'shakedown' suits to extort money from small businesses." (*Tobacco II, supra,* 46 Cal.4th at p.

---

judgment in favor of the bank. The Supreme Court affirmed the judgment as to the breach of contract claim on the ground that plaintiff's knowledge of the actual interest rate "dispose[d] of her contention that [the bank] agreed to charge only 9 percent interest." (*Chern, supra*, 15 Cal.3d at pp. 873-874.) Thus, *Chern* is of no assistance here.

18

316.) "'[T]he intent of California voters in enacting' Proposition 64 was to limit such abuses by "prohibit[ing] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact' [citation] and by providing "that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public" [citation].' [Citation.]" (*Tobacco II, supra*, at pp. 316-317.)

But under Banana Republic's theory, if the scheme *is* successful – that is, if the consumer is influenced by the momentum to buy created by the false advertising, and therefore buys at the inflated price—the consumer, as a matter of law, *also* has no standing, because just before money changed hands, when the deception was finally revealed, the consumer learned the full price of the item bought. Under this theory, only in the very rare case when the advertiser surreptitiously charges an inflated price, which the consumer does not realize he has paid until after money has changed hands, does the consumer have standing to bring a private action. This result seems at odds with the intent of Proposition 64, which "did not propose to curb the broad remedial purpose of the UCL or the use of class actions to effect that purpose, but targeted only the specific abuse described above." (*Tobacco II, supra*, 46 Cal.4th at p. 317.)

In sum, we conclude that plaintiffs have raised a triable issue whether they lost "money or property sufficient to qualify as injury in fact, i.e., *economic injury*," and whether "that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." (*Kwikset, supra,* 51 Cal.4th at p. 322.)

Besides arguing that plaintiffs have no standing, Banana Republic also contends that it presented undisputed evidence that defeats plaintiffs' claim

on the merits.  The contention overstates Banana Republic's showing. Although project manager Debbie Cotton declared that there were no 40 percent off promotions in any Banana Republic stores on November 7, 2010, DeAguero testified in her deposition that she saw a sign advertising such a promotion on that date.  Thus, whether DeAguero observed such a sign is a disputed issue of fact.

Moreover, the evidence of the easels and window clings displayed in Banana Republic stores in December 2011 is not sufficient to defeat plaintiffs' evidence of deceptive advertising.  True, the easel for December 8 through December 15 states, "Save 40% on select styles*" and the easel for December 16 through December 18 states, "Save 40% on your purchase.*"  The asterisks indicate material in small print at the bottom of the easel concerning limitations (it is illegible in the record).  Regardless, the window clings for December 16 through December 18, seen in Exhibits 5 and 6, state "Last Chance" in large letters, followed in smaller letters by "Four Days Only. December 15-18," then "40%" in large type, followed by "off your purchase" in small type.  There are no other words and no asterisks.

Thus, at best, Banana Republic's evidence shows that for at least a few days in December 2011,[5] its windows displayed signs advertising 40 percent off a purchase with no limitations.  In any event, the evidence of Banana Republic's promotional campaign is insufficient on summary judgment to defeat plaintiffs' deposition testimony concerning the advertising they observed.  Resolution of that dispute must await a trial.  "[T]he sole declaration of a party opposing a summary judgment motion which raises a triable issue of fact is sufficient to deny that motion."  (*Estate of Housley*

---

[5]     The Boses did not recall the date they shopped in Banana Republic.

20

(1997) 56 Cal.App.4th 342, 359; see Evid. Code, § 411 ["Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact."].)  Thus, Banana Republic's evidence is insufficient to warrant summary judgment on the merits of plaintiffs' claims.[6]

## DISPOSITION

The judgment in favor of Banana Republic is reversed.  Plaintiffs shall recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**


WILLHITE, Acting P. J.


I concur:



MANELLA, J.

---

[6] In light of our decision, we need not address plaintiffs' arguments regarding their request for injunctive relief or leave to amend.

Bigelow, P. J. Dissenting:

I respectfully dissent. I do not believe the plaintiffs have raised a triable issue of fact as to reliance, therefore I would affirm the trial court judgment.

In *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310 (*Kwikset*), the California Supreme Court explained that to establish a claim under Business and Professions Code section 17200, et seq.,[1] the unfair competition law (UCL), or section 17500, et seq., the fair advertising law (FAL), as amended by Proposition 64 (Prop. 64), a consumer must plead and prove an "injury in fact" that involves "lost money or property." (*Kwikset,* at p. 324.) A plaintiff must show some form of economic injury. (*Id.* at p. 323.)

In addition, when the case is based on a fraud theory involving false advertising and misrepresentation, the plaintiff must plead and prove "'actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions' [citation]. Consequently, 'a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct . . . .' [Citation.]" (*Kwikset, supra*, 51 Cal.4th at pp. 326-327, fn. omitted, citing *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 306, 326, 328.) Similarly, under the Consumer Legal Remedies Act (CLRA), ""plaintiffs . . . [must] show not only that a defendant's conduct was deceptive but that the

---

[1] All further undesignated statutory references are to the Business and Professions Code. Section 17204 provides, in relevant part: "Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Section 17535 includes similar language.

deception caused them harm.'" [Citation.]" (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1386.)

The only legally cognizable economic injury the plaintiffs in this case allege they suffered was the money they spent on full-priced clothes.[2] Whether or not the store window signs were ambiguous or misleading, it is undisputed that before the plaintiffs incurred any economic injury, they learned the clothes they had selected were not 40 percent off. They then *changed* their purchase decisions, choosing to buy only some of the items they had selected, fully aware they were not discounted.

On these undisputed facts, the plaintiffs cannot establish they would not have purchased the items they bought absent the misleading signs, or that because of the misrepresentation they parted with more money than they otherwise would have, or that they believed the 40 percent off representation to be true and in reliance thereon entered into the purchase. (*Kwikset, supra*, 51 Cal.4th at p. 330; *Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217, 231-232; see also *Hall v. Time Inc.* (2008) 158 Cal.App.4th

---

[2] To the extent the plaintiffs claim their economic injury consisted of lost opportunity costs and time, they have cited no legal authority supporting the claim that such harm alone is sufficient to establish standing in a UCL or FAL claim. As noted in *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305: "Whereas a federal plaintiff's 'injury in fact' may be intangible and need not involve lost money or property, Proposition 64, in effect, added a requirement that a UCL plaintiff's 'injury in fact' specifically involve 'lost money or property.'" (*Id.* at p. 1348, fn. 31; §§ 17204, 17535.) Despite arguing, pursuant to *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, that certain types of transaction costs and opportunity costs may constitute "any damage" under the CLRA, plaintiffs failed to proffer any evidence creating a triable issue of fact as to whether they suffered any such transaction or opportunity costs as a result of the store's allegedly deceptive conduct.

847 [no causation where plaintiff alleged invoice was misleading but he took no action based on invoice]; *Brown v. Bank of America* (D. Mass. 2006) 457 F.Supp.2d 82, 89 [no causation where, despite any deficiencies in signs on ATMs warning of fees to be charged, customers were notified by "click through" screen of charges before completing transaction].)

While reliance on the truth of the defendant's misrepresentation need not be the sole or decisive cause of the plaintiff's injury, that reliance must be at least a substantial factor in influencing the decision that causes the injury. (*In re Tobacco II Cases, supra,* 46 Cal.4th at p. 326.) Thus, a consumer similar to the plaintiffs in this case may have wanted to buy a Banana Republic sweater because she liked the color, the material was desirable, and a misleading sign led her to believe it would be 40 percent off. In that scenario, reliance on the store's misrepresentation is only one factor that led to the consumer's decision to hand over money to buy the sweater. But to establish a fraud-based deceptive advertising claim, the consumer must still show that, although the deception was not the only reason she bought the sweater, she in part relied on the truth of the misrepresentation in consummating the transaction. The plaintiff cannot make that showing if, before executing the sale, she knew the representation of a 40 percent discount to be false.

Indeed, "'well-settled principles regarding the element of reliance in ordinary fraud actions'" require this conclusion. (*Kwikset, supra,* 51 Cal.4th at pp. 326-327, citing *In re Tobacco II Cases*, at p. 306) Evidence a plaintiff knows the defendant's representation is false, before the injury-producing conduct occurs, rebuts a presumption of reliance. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 976 [presumption of reliance arises when there is a showing a misrepresentation is material, absent

3

evidence conclusively rebutting reliance].)  This principle has often been stated in cases in which the plaintiff conducted an investigation prior to consummating a transaction, and, through the investigation, discovered the falsity of the defendant's statements.

In such cases, the plaintiff's claim of reliance fails.  "'If after a representation of fact . . . the party to whom it was made . . . actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it.  Such claim would simply be untrue.'" (*Oppenheimer v. Clunie* (1904) 142 Cal. 313, 319, impliedly overruled on another ground in *Liodas v. Sahadi* (1977) 19 Cal.3d 278; see also *Maxon-Nowlin Co. v. Norswing* (1913) 166 Cal. 509, 512 [no recovery by party who has actually learned the truth, and has not relied upon the misrepresentation]; *Orient Handel v. United States Fid. & Guar. Co.* (1987) 192 Cal.App.3d 684, 694-696; *Elkind v. Woodward* (1957) 152 Cal.App.2d 170, 176-179; *Blackman v. Howes* (1947) 82 Cal.App.2d 275, 278-280; *Carpenter v. Hamilton* (1936) 18 Cal.App.2d 69, 71-72, 75-76; *Gratz v. Schuler* (1914) 25 Cal.App. 117, 121-122 [if plaintiff tests the truth of representations and discovers "prior to the consummation of the contract that such representations are false, he will not be heard to say that he was deceived by them.  We take it that this proposition needs no authority to support it."].)[3]  I would find this long-standing principle applicable to ordinary fraud cases is controlling here.

---

[3]    There are exceptions to this rule, none of which apply here.  (See e.g., *Jue v. Smiser* (1994) 23 Cal.App.4th 312, 316-318 [real property transaction in which plaintiff is misled at inception of transaction, enters purchase contract, learns of fraud while property is in escrow, and still closes escrow; plaintiff may still establish reliance to support fraud claim, as permitted by Civil Code section 3343]; *Brownlee v. Vang* (1965) 235 Cal.App.2d 465, 474-

The majority opinion repeatedly states the plaintiffs raised a triable issue of fact on actual reliance because, even though they learned the 40 percent discount did not apply to their items, their embarrassment and frustration led to them feeling pressured to buy clothes at full price anyway. I am aware of no legal authority supporting the proposition that a plaintiff's embarrassment or frustration is relevant to a determination of reliance when the plaintiff *knows the true facts* before consummating the transaction that causes the injury. Similarly, I see the majority's "momentum to buy" theory as both a departure from well-settled principles regarding reliance in ordinary fraud actions and as a dilution of the Prop. 64 requirement that the plaintiff suffer economic injury as a result of the defendant's improper conduct.

I also do not believe the majority's "momentum to buy" analysis can be applied consistently, while adhering to principles of reliance in ordinary fraud actions. For example, as I understand the majority's reasoning and "momentum to buy" theory, any of the following scenarios could arguably establish actual reliance so long as the consumer is drawn into the store by a misleading discount advertisement: a) a consumer is told as soon as he picks up an item in the store that it is not in fact discounted. He is frustrated or embarrassed and buys the item anyway; b) a consumer learns the "true price" when he is in line to buy the item, but not yet at the front of the line; c) a consumer, upon learning at the cash register that the discount will not apply, is not too embarrassed or frustrated to simply walk away from the sale. However, she decides she wants one of the items she selected, even at full

476 [if plaintiff suspects deception but defendant reassures plaintiff there has been no fraud, plaintiff may still establish reliance]; *Blackman v. Howes, supra,* 82 Cal.App.2d at p. 279 [accord].)

5

price, and therefore buys it; or d) a consumer is at home shopping on the internet when she sees a misleading advertisement for a 40 percent discount at an online retailer's website. She visits the site and places items in her online shopping cart, only to learn right before she clicks "buy" that the items in her cart are not, in fact, 40 percent off.

I expect the court's decision will invite exhaustive litigation as parties attempt to work out just how little "momentum to buy" is required to establish actual reliance. Rather than opening the door to suits that veer ever farther away from establishing actual reliance, this court should adopt the bright line rule that if the plaintiff learns the "truth" about an item's price before executing a purchase, he or she cannot establish actual reliance on a misleading price advertisement.[4]

---

[4] In a variety of consumer protection contexts, a plaintiff's actual or imputed knowledge of the falsity or misleading character of a defendant's statement or conduct has been a factor in defeating claims based on the defendant's allegedly misleading or deceptive conduct. (See, e.g., *Chern v. Bank of America* (1976) 15 Cal.3d 866, 873-874 [knowledge of actual method of computing interest defeated claim of damages for breach of contract]; *Hall v. Time Inc., supra,* 158 Cal.App.4th at pp. 857-858 [despite invoice that suggested payment was due before expiration of free-trial period, plaintiff did not act based on invoice or pay for book before free-trial period expired; no sufficient allegation of causation]; *Wayne v. Staples, Inc.* (2006) 135 Cal.App.4th 466 [despite order form that may have been ambiguous as to whether customers would be charged certain surcharge, form was not misleading because customers were clearly informed of actual price before purchase]; *Plotkin v. Sajahtera, Inc.* (2003) 106 Cal.App.4th 953 [failure to have posted sign of valet parking charges was not unfair business practice since customers were given parking ticket that clearly displayed charges]; *South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861 [interest computation was not deceptive or misleading business practice where plaintiff, a sophisticated business, was aware in advance of how interest would be calculated]; *Brown v. Bank of America, supra,* 457 F.Supp.2d at p. 89 [no causation related to defective notice of

The majority suggests a finding of no reliance in this case would go too far in limiting consumers' standing to bring claims seeking redress for "bait and switch" schemes. As an initial matter, I note this case does not represent a classic "bait and switch" scheme. A classic bait and switch involves the advertisement of a product the merchant does not actually intend to sell. "The trick is to lure the prospective 'sucker' and then overwhelm him with glib salesmanship. The essence of this practice is that the seller really has no intention of delivering the product advertised." (*Hawaii Community Federal Credit Union v. Keka* (2000) 11 P.3d 1, 15; *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 779, 785 [describing as "'bait and switch' advertising" television advertising campaign in which bank represented a $1,000 loan could be repaid in full for $18 per month, but no such loan was actually available].)

In a classic bait and switch, the merchant actively conceals the fact of the misrepresentation from the consumer, resulting in the consumer buying an item he did not enter the store to purchase. Further, the consumer continues to rely on the merchant's misrepresentations through the consummation of the purchase of the "unwanted" item, believing the advertised item is not actually available, or that it is inferior in a meaningful way to the item the merchant actually wants to sell to reap greater profit margins.

In such schemes, the consumer's awareness that she is buying a product different from what was advertised does not necessarily mean she has ceased relying on the merchant's continuing deception regarding the advertised product. In contrast, here, there was no evidence any salesperson

charges on ATMs because screen requiring customer consent before charges were imposed broke chain of causation].)

attempted to convince the plaintiffs to purchase items they did not want. Everything about the allegedly misleading 40 percent off sale sign was revealed to the plaintiffs before they consummated their purchases. I therefore disagree that any decision in this case is necessarily applicable to other "bait and switch" cases.

However, I accept that the facts of this case present what could be described as a version of a bait and switch scheme. I am sympathetic to the concern that a finding that a plaintiff cannot establish actual reliance under the circumstances presented here will allow some misleading advertising claims to go unprosecuted. Yet, I do not believe the law as it stands permits any other conclusion.

Under the language of section 17204 as amended by Prop. 64, and the California Supreme Court's interpretation of the law, actual reliance is required. To have standing, plaintiffs must suffer concrete economic injury as a result of the defendant's allegedly misleading or deceptive conduct. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228; *Hall v. Time Inc., supra,* 158 Cal.App.4th at pp. 853-854.) Based on the relevant authorities, I can only understand this rule as requiring that the plaintiff establish he believed the defendant's representation was true and, in reliance on that representation, the plaintiff consummated the transaction that is the source of the economic loss. In my view, only a legislative change may create an exception to this rule.

As stated in *Kwikset*, "a UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made." (*Kwikset, supra,* 51 Cal.4th at p. 327, fn. 10.) Our high court has explained that amended section 17204 should be applied in accordance with ordinary fraud principles.

8

In an ordinary fraud case, if the plaintiff learns the relevant true facts before engaging in the conduct that causes the alleged injury, he cannot prove reliance on the deception.  The economic harm here was that plaintiffs paid full price for the clothes they bought.  As a result, we must "isolate" the point in time at which money was exchanged because that is the moment at which the plaintiffs were injured in a legally cognizable way under the consumer protection laws.  The plaintiffs knew the relevant true facts before they paid full price.  They cannot establish their reliance on the defendant's deception caused their injury.

For these reasons I would affirm the trial court judgment.


BIGELOW, P. J.*

---

*Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9