Filed 1/28/25

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARK MARTINEZ et al., | B320441, B322775, B327772 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC655197) |
| SAI LONG BEACH B, INC., | |
| Defendant and Respondent. | |

APPEALS from a summary judgment and orders of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Affirmed in part, reversed in part.

Auto Fraud Legal Center, Christopher P. Barry and Michelle A. Cook, for Plaintiffs and Appellants.

cRobinett and Daniel F. Berberich, for Defendant and Respondent.

_____

[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II.B.2, II.B.3, III.A, and III.B.

# I.    INTRODUCTION

Plaintiffs Mark Martinez and Maria Cabrera filed a complaint alleging various causes of action against defendant SAI Long Beach B, Inc., doing business as Long Beach BMW, when the used car they purchased from defendant developed engine problems and defendant refused to pay for repairs. The trial court granted defendant's motion for summary judgment, awarded it costs, and awarded it attorney fees as the prevailing party pursuant to the sale contract. Plaintiffs appeal from the rulings. In the unpublished portion of our opinion, we affirm the judgment in defendant's favor and award of costs other than attorney fees. In the published portion of our opinion, we reverse the award of attorney fees.

# II.    BACKGROUND

## A.    *Facts*

On September 18, 2016, plaintiffs purchased a used 2015 Subaru Impreza (Vehicle)[1] from defendant for approximately $41,000, by making a downpayment of $500 and financing the remainder through a retail installment sales contract (Sale Contract). As we will discuss more fully below, the Sale Contract included an attorney fees provision.

At the time of sale, plaintiffs signed a Buyer's Guide, which included a check mark on a section entitled "WARRANTY." That section provided, "MANUFACTURER'S WARRANTY STILL

---

[1]    The Vehicle was manufactured by Subaru of America, Inc. (Subaru). Subaru is not a party to this appeal.

2

APPLIES on the vehicle.  Consult the manufacturer's warranty booklet for details as to the warranty coverage, service location, etc.  The dealership itself assumes no responsibility for any repairs, regardless of any oral statements about the vehicle.  All warranty coverage comes from the unexpired manufacturer's warranty."  Subaru's warranty stated, among other things that, "[e]very owner of the vehicle during the warranty period shall be entitled to the benefits of these warranties."

The Buyer's Guide also included a check mark on a section entitled "SERVICE CONTRACT."  That section stated that "[i]f you buy a service contract within 90 days of the time of sale, state law 'implied warranties' may give you additional rights." Plaintiffs purchased, for an additional $2,425, an optional service contract (Service Contract), which the Sale Contract described as a contract with "EASYCARE TOTALCARE," a third party.[2]

At the time of purchase, defendant provided plaintiffs a CARFAX Vehicle History Report (CARFAX Report).  The CARFAX Report stated, "No accidents or damage reported to CARFAX," and that the vehicle included seven service history records.  The report also stated, "CARFAX DEPENDS ON ITS SOURCES FOR THE ACCURACY AND RELIABILITY OF ITS INFORMATION."

---

[2]     The parties agree that the name of the Service Contract was "EasyCare" and that the name of the party that provided the contract was Automobile Protection Corporation.  For ease of reference, we will refer to the contracting party as "EasyCare."

The plaintiffs drove the Vehicle for 26 days before it experienced an engine knock in Nevada.[3]  On October 14, 2016, plaintiffs took the Vehicle to Subaru of Las Vegas for repairs. Plaintiffs submitted claims under Subaru's express warranty and the Service Contract to Subaru and EasyCare, respectively. Subaru and EasyCare refused to pay for repairs to the Vehicle. Subaru indicated that repairs to the Vehicle were not covered under the manufacturer's warranty because of improper maintenance records and a "lack of mainte[nance]" by the customer.  EasyCare declined plaintiffs' claim, purportedly because 30 days had not elapsed between the date of purchase and the time of the claim.

B.    *Procedural History*

    1.    <u>Complaint and Settlement with Subaru</u>

On March 27, 2017, plaintiffs filed a complaint against defendant and Subaru alleging, among other things:  (1) breach of the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act (Civ. Code[4], § 1790 et seq., Song-Beverly Act); (2) violation of the Consumers Legal Remedies Act (§ 1750 et seq., CLRA); and (3) violation of Business and Professions

---

[3]    The parties dispute whether the Vehicle had an engine defect.

[4]    Further statutory references are to the Civil Code unless otherwise stated.

Code section 17200 et seq. (UCL).[5]  On December 21, 2017, plaintiffs settled their claims against Subaru for a payment of $30,700.

### 2. Plaintiffs' Summary Adjudication Motion

On November 25, 2020, plaintiffs moved for summary adjudication on their first claim for breach of the implied warranty of merchantability.  Defendant opposed the motion.

On February 23, 2021, the trial court denied plaintiffs' motion, finding there was no evidence that defendant provided an express warranty to plaintiffs and, under the Song-Beverly Act, a retail seller of a used car is only liable for breaches of the implied warranty of merchantability in "a sale in which an express warranty is given" (§ 1795.5).

### 3. Defendant's Summary Judgment Motion

On March 2, 2021, defendant moved for summary judgment.  As relevant here, defendant argued that it was entitled to judgment on the implied warranty of merchantability claim because there was no dispute that it had not provided an express warranty to plaintiffs.

---

[5]  Plaintiffs also alleged causes of action for:  breach of an express warranty under the Song-Beverly Act; breach of written and implied warranties under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq.; Magnuson-Moss Act); and violation of Business and Professions Code section 17500, the false advertising law.  Plaintiffs do not appeal the trial court's granting of judgment in defendant's favor on these causes of action.

Defendant also argued that it was entitled to judgment on the CLRA claim because it had not made the alleged misrepresentations about the Vehicle. In support of its motion, defendant submitted Martinez's deposition testimony that: he did not discuss the Vehicle's condition with anyone at defendant, including the salesperson and the finance manager. Regarding the Service Contract, defendant asserted that plaintiffs could not demonstrate they had detrimentally relied on the finance manager's statements that the Service Contract "cover[ed] everything," because Martinez testified that he had received and read the Service Contract's terms.

Finally, defendant argued that plaintiffs' UCL claim, which was dependent on plaintiffs' breach of the implied warranty of merchantability and CLRA claims, also failed.

Plaintiffs filed an opposition. For the implied warranty of merchantability claim, plaintiffs contended that defendant participated in a sale in which an express warranty, namely, the balance of the unexpired warranty issued by Subaru, was given. According to plaintiffs, defendant therefore was responsible for breaches of the implied warranty of merchantability. Plaintiffs also argued there were triable issues of material fact as to whether defendant violated the CLRA by making representations regarding the condition of the Vehicle and the Service Contract, citing Martinez's deposition testimony, his declaration, and the Buyer's Guide. Finally, plaintiffs contended there were triable issues of material fact regarding a UCL violation based on the other violations.

On February 18, 2022, the trial court granted defendant's summary judgment motion. The court found that defendant was not responsible for an implied warranty of merchantability of the

6

Vehicle, referring to its prior ruling on plaintiffs' summary adjudication motion. For the CLRA claim, the court cited Martinez's deposition testimony and determined there was no material dispute as to whether defendant had made any misrepresentations or concealments. The court also sustained certain objections to Martinez's declaration, which we discuss further below. Finally, the court found no violation of the UCL based on its prior rulings. On March 22, 2022, the trial court entered judgment in favor of defendant. Plaintiffs timely filed a notice of appeal.[6]

### 4. Attorney Fees Motion

After the trial court entered judgment in its favor, defendant moved for an award of reasonable attorney fees on May 24, 2022, citing the fees provision in the Sale Contract. Section 3(c) of the Sale Contract included the following attorney fees provision: "You may have to pay collection costs. You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts."[7] Plaintiffs opposed the motion, arguing, among other things, that an award of attorney fees would violate the purpose of the CLRA, Song-Beverly Act,

---

[6]    Following the trial court's awarding of costs to defendant, plaintiffs timely filed an appeal of that order. Plaintiffs' sole argument in that appeal is that if the judgment is reversed, the costs award also must be reversed.

[7]    As we will explain, section 1717 renders the above fee provision applicable to the entire contract and the parties.

and other consumer protection statutes upon which plaintiffs sought relief. On March 6, 2023, the trial court found that plaintiffs' claims were "on a contract," specifically, the Sale Contract, and therefore defendant, as the prevailing party, was entitled to fees pursuant to section 1717, subdivision (a). The court awarded defendant $109,703.50 as reasonable attorney fees. Plaintiffs appealed the order.

## III.   DISCUSSION

### A.   *Evidentiary Rulings*

Plaintiffs first contend that the trial court erred by sustaining defendant's objection to Martinez's declaration in support of the opposition to the summary judgment motion. "'""Pursuant to the weight of authority, appellate courts review a trial court's rulings on evidentiary objections in summary judgment proceedings for abuse of discretion. [Citations.]' [Citation.] The party challenging a trial court's evidentiary ruling has the 'burden to establish such an abuse, which we will find only if the trial court's order exceeds the bounds of reason. [Citation.]"'"" (*Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1118.)

At his deposition on December 4, 2018, Martinez testified as follows:

"Q:   Okay. During the sales transaction with the young lady, did she tell you anything about the vehicle?

"A:   No.

"Q:   Did she make any representations about the vehicle to you?

8

"A: No.

"Q: Did you have any questions about the vehicle for the salesperson?

"A: No.

"Q: So you didn't really ask any questions about the vehicle or about the condition of the vehicle?

"A: No. They just showed me a CARFAX. That's pretty much it."

Plaintiffs submitted a declaration by Martinez in support of their opposition to the summary judgment motion, which stated: "I would not have bought the Vehicle but for [defendant's] assurances that the Vehicle was in good condition, had been properly maintained, and came with the remaining manufacturer warranty. I spent a significant amount of time discussing these things with [defendant], including sales representatives and the finance manager."

Citing among other cases *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 (*D'Amico*), defendant objected to this portion of Martinez's declaration on the grounds that it was inconsistent with his prior deposition testimony. The trial court sustained defendant's objection.

Plaintiffs assert the trial court erred because this portion of Martinez's declaration did not contradict Martinez's deposition testimony. We agree, in part. In *D'Amico*, our Supreme Court held, "'[w]here . . . there is a clear and unequivocal admission by the plaintiff, himself, in his deposition'" and the plaintiff contradicts that admission in a subsequent declaration, "'we are forced to conclude there is no substantial evidence of the existence of a triable issue of fact.'" (*D'Amico, supra*, 11 Cal.3d at p. 21.) "Properly applied, *D'Amico* is limited to instances where

9

'credible [discovery] admissions . . . [are] contradicted *only* by self-serving declarations of a party.' [Citations.] In a nutshell, the rule bars a party opposing summary judgment from filing a declaration that purports to impeach his or her own prior sworn testimony." (*Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1521–1522.)

Plaintiffs argue that the *D'Amico* rule does not support the trial court's ruling striking the challenged portion of Martinez's declaration because "the declaration relates to matters not discussed at the declarant's earlier deposition and . . . the declaration does not contradict the prior testimony." According to plaintiffs, although Martinez's testimony supported a finding that he did not discuss the condition of the Vehicle with the salesperson on the date of the sale, it did not preclude the possibility that the salesperson had given him assurances about the Vehicle's condition over the phone the prior day. The record is to the contrary. During Martinez's deposition, defendant's counsel asked him about the nature of his conversation with the salesperson on the day before his purchase of the Vehicle. Martinez testified: "I was just telling her I was interested in the car, and I wanted to see if I could get approved for the car, but first I wanted to see the car, check the records of the car and inspect the car if there's any damages, accidents, you know, fender-benders, anything." Thus, Martinez testified that he asked to see the condition of the Vehicle before purchasing it, but did not testify that the salesperson made representations about the car's condition.

Plaintiffs alternatively contend they presented evidence that the salesperson represented the Vehicle was properly maintained and in good condition by providing Martinez with a

10

CARFAX report.  The CARFAX report, however, expressly stated that CARFAX, a nonparty to these proceedings, relied on the information provided to it in preparing its report.  Thus, the CARFAX report was, at most, a representation that no problems with the Vehicle had been reported to CARFAX.  The report did not represent that the Vehicle was properly maintained and in good condition.  Accordingly, the trial court did not abuse its discretion by sustaining an objection to Martinez's declaration regarding representations made by the salesperson.

We next consider plaintiffs' challenge to the trial court's order sustaining an objection to that portion of Martinez's declaration that described a discussion of the manufacturer's warranty with defendant's finance manager.  At his deposition, Martinez testified that the finance manager stated the manufacturer's warranty still applied to the Vehicle.[8]  For purposes of this appeal, we will assume the court erred but, as we explain below, we conclude plaintiffs were not prejudiced by the assumed error because a retailer who sells a used product with an unexpired manufacturer's warranty is not responsible for an implied warranty of merchantability as a matter of law.  (See *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 ["'Anyone who seeks an appeal to predicate a reversal of [a judgment] on error must show that it was prejudicial'"].)

---

[8]     Defendant does not dispute that plaintiffs were informed by defendant that the Vehicle came with an unexpired manufacturer's warranty.

11

B.      *Summary Judgment*

    1.      Standard of Review

    "'A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law.  [Citation.]  The burden of persuasion remains with the party moving for summary judgment.  [Citation.]'  (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003 (*Kahn*); see Code Civ. Proc., § 437c, subd. (c).)  Thus, a defendant moving for summary judgment 'bears the burden of persuasion that "one or more elements of" the "cause of action" in question "cannot be established," or that "there is a complete defense" thereto.  [Citation.]'  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; see Code Civ. Proc., § 437c, subd. (o)(2).)  Such a defendant also 'bears the initial burden of production to make a prima facie showing that no triable issue of material fact exists.  Once the initial burden of production is met, the burden shifts to [plaintiff] to demonstrate the existence of a triable issue of material fact.'  (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1250.)

    "On appeal from the entry of summary judgment, '[w]e review the record and the determination of the trial court de novo.'  (*Kahn, supra,* 31 Cal.4th at p. 1003.)  'While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny.  [Citation.]  We can find a triable issue of material fact "if, and only if, the evidence would allow a reasonable trier of fact to find

12

the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." [Citation.]' (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433; see also *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.)" (*Janney v. CSAA Ins. Exchange* (2021) 70 Cal.App.5th 374, 389–390.)

### 2. Song-Beverly Act—Implied Warranty of Merchantability

Plaintiffs contend the trial court erred by finding that defendant was entitled to judgment, as a matter of law, on the implied warranty of merchantability claim.[9]

"The Song-Beverly Act is a remedial statute designed to protect consumers who have purchased products covered by an express warranty." (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 798.) The Act applies only to "new" products (§ 1791, subd. (a)) but also provides that, "[n]otwithstanding the provisions of subdivision (a) of Section 1791 defining consumer goods to mean 'new' goods, the obligation of a distributor or retail seller of used consumer goods in a sale in which an express warranty is given shall be the same as that imposed on manufacturers under this chapter . . . ." (§ 1795.5.) If section 1795.5 applies, a retail seller of a used consumer good is obligated to provide an implied warranty that is

---

[9] Plaintiffs request judicial notice of various historical amendments concerning the Song-Beverly Act. Defendant also requests judicial notice of legislative history materials regarding the Song-Beverly Act. We grant the requests. (Evid. Code, §§ 452, subd. (c), 459.)

coextensive with an express warranty for a period of at least 30 days but no more than three months after sale of the used product.  (*Ruiz Nunez v. FCA US LLC* (2021) 61 Cal.App.5th 385, 399; § 1795.5, subd. (c).)

Plaintiffs argue that because "the [V]ehicle *came with* the balance of the manufacturer's warranty" and plaintiffs "did not have to pay for it," the express warranty "was *given* to [plaintiffs] when [they] bought the [V]ehicle."  In other words, Subaru's express warranty, which was "given" at the time of the original sale of the Vehicle, was then subsequently "given" to plaintiffs at the time of the Sale Contract.  Plaintiffs' interpretation, however, is contrary to our Supreme Court's interpretation of section 1795.5 in *Rodriguez v. FCA US, LLC* (2024) 17 Cal.5th 189.  The court there stated, "'[s]ection 1795.5 provides express warranty protections for used goods only where the entity selling the used product *issues an express warranty at the time of sale*.' [Citation.]"  (*Id.* at p. 201.)  "[J]ust as with new products, the [Song-Beverly] Act's remedies for failure to repair a used product in conformity with an express warranty have applicability where the express warranty accompanies the sale of the product.  For new products, liability extends to the manufacturer; for used products, liability extends to the distributor or retail seller and not to the manufacturer, at least where the manufacturer has not issued a new warranty or played a substantial role in the sale of a used good.  [Citations.]  In both cases, the Act's protections are premised on an express warranty arising from the product's sale.  [Citation.]"  (*Id.* at p. 202.)

Here, Subaru, the provider of the express warranty, did not "give," that is, issue the express warranty at the time of the Sale Contract.  Rather, Subaru *had earlier given* the express warranty

14

at the time of the *original* sale of the Vehicle. What plaintiffs received at the time of the Sale Contract was the remainder of an express warranty that was transferred to them as part of the sale by operation of law. (See *Rodriguez v. FCA US, LLC* (2022) 77 Cal.App.5th 209, 222 ["In plaintiffs' case, the limited powertrain warranty did not 'aris[e] out of' the sale, it transferred to plaintiffs by operation of law along with title to the truck"].) Thus, plaintiffs have failed to raise a triable issue of material fact for their Song-Beverly Act implied warranty claim and the trial court correctly granted summary judgment on this claim. (Code Civ. Proc., § 437c, subd. (c).)

     3.    <u>CLRA</u>

We next consider whether the trial court erred in granting defendant judgment on plaintiffs' CLRA claim. "'The CLRA makes unlawful, in . . . section 1770, subdivision (a) . . . , various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."' (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 639.) . . . [¶] The CLRA sets forth 27 proscribed acts or practices. (. . . § 1770, subd. (a)(1)–(27).)" (*Veera v. Banana Republic, LLC* (2016) 6 Cal.App.5th 907, 915.) According to plaintiffs, defendant violated section 1770, subdivisions (a)(5), (7), and (14), by: "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; "Representing that goods or services are of

15

a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Specifically, plaintiffs allege that defendant violated the CLRA by making "misrepresentations and concealments concerning: the condition of the Vehicle, the Vehicle's prior maintenance history, the Vehicle's warranties and applicable service contracts, and the drivability of the Vehicle."

### a. Initial Burden and Concealment

Plaintiffs contend that defendant did not meet its initial burden of demonstrating there were no triable issues of material fact as to the CLRA cause of action. We reject this argument. In its summary judgment motion, defendant argued that it made no misrepresentations regarding the Vehicle's condition, maintenance history, manufacturer's warranty, or the Service Contract. In support, defendant submitted Martinez's deposition testimony, in which he testified that he discussed the Vehicle with the salesperson and the finance manager only, and that neither made any representation as to the condition of the Vehicle. Defendant also cited Martinez's testimony that he read the Service Contract's coverage terms, and argued that the finance manager's representation about the Service Contract was true. Defendant thereby met its initial burden of proof that it made none of the misrepresentations upon which plaintiffs allegedly relied.

Plaintiffs also contend that defendant's summary judgment motion did not dispose of all their CLRA theories because

16

defendant did not use the word "conceal" in its motion for summary judgment. According to plaintiffs, defendant therefore did not adequately challenge their allegation that defendant had concealed material facts relating to the Vehicle's maintenance history and drivability. We disagree.

"[A]n omission is actionable under the CLRA if the omitted fact is (1) 'contrary to a [material] representation actually made by the defendant' or (2) is 'a fact the defendant was obliged to disclose.' [Citations.]" (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1258.) Plaintiffs' complaint makes no distinction between misrepresentations and concealment of fact regarding the Vehicle's maintenance history and drivability, and we find no distinction here. (See *Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 36 ["It is fundamental that every affirmative misrepresentation of fact works a concealment of the true fact"].)

> b.   Condition of the Vehicle and Manufacturer's Warranty

Plaintiffs next contend that they raised triable issues of material fact that defendant made misrepresentations as to the Vehicle's condition, citing Martinez's declaration. As we discussed above, the trial court properly sustained an objection to that portion of Martinez's declaration that stated the salesperson made representations about the Vehicle's condition. Plaintiffs point to no other evidence in the record in support of their argument that there is a triable issue of material fact on this issue.

17

Plaintiffs also argue that defendant made misrepresentations as to the manufacturer's warranty by representing that Subaru would honor the manufacturer's warranty and cover the engine damage that the Vehicle incurred. Plaintiffs submitted evidence that the finance manager stated the manufacturer's warranty still applied to the Vehicle.[10] That statement, however, was accurate, as plaintiffs concede, "it is undisputed the vehicle *came with* the balance of the manufacturer's warranty." Plaintiffs did not submit any evidence that defendant made representations that Subaru would honor the manufacturer's warranty and cover the engine damage. And, to the extent that plaintiffs contend the statement that the warranty "still applied" can be interpreted to mean that Subaru would honor its warranty and cover the engine damage, any such interpretation is, at best, a prediction about a future event by a third party and not a misrepresentation. (See *Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 823 ["'[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud'"].)

c. Service Contract

Plaintiffs next contend there are triable issues of material fact that defendant falsely represented the Service Contract

---

[10] Specifically, Martinez testified that the finance manager "told me it still has manufacturer warranty [*sic*] and it still applies." The trial court sustained an objection to Martinez's declaration that defendant repeatedly represented to plaintiffs that any damages would be covered under the manufacturer's warranty. Plaintiffs do not challenge this evidentiary ruling on appeal.

would cover any mechanical problems with the Vehicle.[11] We find no triable issues.

Plaintiffs assert that the finance manager told them that the Service Contract "would cover any mechanical problems that arose." In support, plaintiffs cite Martinez's deposition, in which he testified: "When I discussed this package of EasyCare, I discussed with him the additional insurance on the car in case any damages happen to my powertrain, engine, transmission, rear axle, front axle as well as lights, rims and he told me and stated that it covers everything."

The Service Contract, by its terms, *does* cover repairs on mechanical issues, including damage to the powertrain, engine, transmission, axle, and rims. But it excludes repairs that are "covered by the manufacturer, distributor or importer's warranty for the term and mileage of such coverage at the time of first retail sale, regardless of whether such warranty for part(s), component(s) or repair(s): can or cannot be honored or collected or is invalidated for <u>any</u> reason . . . ." And, as alleged by plaintiffs, the manufacturer's warranty was still applicable to, in other words, "covered," the engine defect.

Thus, at best, plaintiffs' theory of liability is one of fraudulent omission, premised on defendant having an affirmative duty to orally disclose that repairs that were covered (even if not honored) by a manufacturer's warranty were excluded from coverage under the Service Contract. (See

---

[11] We note that plaintiffs do not appear to allege in their complaint that the *Service Contract* was the transaction at issue for their CLRA cause of action. Nonetheless, we will assume, as the parties do, that plaintiffs allege a CLRA claim based on the Service Contract.

*Daugherty v. American Honda Motor Co., Inc.* (2006) 144
Cal.App.4th 824, 835.) Plaintiffs have failed to raise a triable
issue of material fact that defendant fraudulently omitted the
scope of the Service Contract's coverage. To be actionable as a
fraudulent omission under the CLRA, "the omission must be
contrary to a representation actually made by the defendant, or
an omission of a fact the defendant was obliged to disclose." (*Id.*
at p. 835.) "There are 'four circumstances in which nondisclosure
or concealment may constitute actionable fraud: (1) when the
defendant is in a fiduciary relationship with the plaintiff;
(2) when the defendant had exclusive knowledge of material facts
not known to the plaintiff; (3) when the defendant actively
conceals a material fact from the plaintiff; and (4) when the
defendant makes partial representations but also suppresses
some material facts. [Citation.]' [Citation.]" (*LiMandri v.
Judkins* (1997) 52 Cal.App.4th 326, 336.)

Here, there was no evidence that defendant was in a
fiduciary relationship with plaintiffs. Nor is there evidence that
defendant had exclusive knowledge of the material facts,
concealed those facts, or suppressed some facts since Martinez
testified that he received the Service Contract at the time of sale,
fully read that contract, and then signed it.[12] Plaintiffs therefore
have failed to raise a triable issue of material fact as to their
CLRA claim with respect to the Service Contract and the trial

---

[12]    The signature portion of the Service Contract contained a
section for the customer to initial, which stated that the contract
"[c]over[ed] items specifically listed . . . except those excluded in
Section E of Terms and Conditions." Section E of the Service
Contract is entitled "WHAT IS NOT COVERED."

20

court did not err when it granted summary judgment on this claim. (Code Civ. Proc., § 437c, subd. (c).)

### 4. UCL

Plaintiffs argue that they raised triable issues of material fact on their UCL claim, citing their arguments regarding their CLRA claim. Because we have found against plaintiffs on their CLRA claim, we likewise find that plaintiffs have not raised a triable issue of material fact as to their UCL claim. Accordingly, there are no triable issues of material fact for any of plaintiffs' claims on appeal, and defendant is entitled to judgment as a matter of law.

## C.   *Attorney Fees*

Plaintiffs argue that the trial court erred by awarding defendant attorney fees pursuant to section 1717, subdivision (a). We review the statutory basis for an award of attorney fees de novo. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213.)

### 1.   Basis for Award of Attorney Fees

"California follows the 'American rule,' under which each party to a lawsuit ordinarily must pay his or her own attorney fees. [Citations.] Code of Civil Procedure section 1021 codifies the rule, providing that the measure and mode of attorney compensation are left to the agreement of the parties '[e]xcept as attorney's fees are specifically provided for by statute.'" (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 516.) "Code of Civil

21

Procedure section 1033.5 provides, in subdivision (a)(10), that attorney fees are 'allowable as costs under [Code of Civil Procedure s]ection 1032' when they are 'authorized by' either 'Contract,' 'Statute,' or 'Law.'  Thus, recoverable litigation costs do include attorney fees, but only when the party entitled to costs has a legal basis, independent of the cost statutes and grounded in an agreement, statute, or other law, upon which to claim recovery of attorney fees." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 606 (*Santisas*).)

Plaintiffs contend that the one-way fee-shifting statutes that apply to their statutory claims prevail over the reciprocal fee-shifting policy of section 1717 such that defendant is not entitled to recover attorney fees.[13]  Defendant counters that it is entitled to recovery of attorney fees under section 1717, citing *Reyes v. Beneficial State Bank* (2022) 76 Cal.App.5th 596 (*Reyes*) and *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985 (*Murillo*).

Our analysis begins with the text of the relevant statutes. "We independently review questions of statutory construction.

---

[13]    The UCL and false advertising law do not provide for attorney fees to a prevailing party.  (See Bus. & Prof. Code, §§ 17203 [UCL; restitution, injunctive relief, and civil monetary penalties], 17535 [false advertising law; same]; see also *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1180 ["[I]f a plaintiff does not bring suit solely under the unfair competition law, the trial court has discretion to apportion fees to claims not brought pursuant to that law—as long as those claims authorize attorney fees awards"].)  Defendant's entitlement to attorney fees depends upon whether defendant has "an independent legal basis for recovery of attorney fees." (*Santisas, supra*, 17 Cal.4th at p. 606.)

[Citation.] In doing so, we look first to the words of a statute, 'because they generally provide the most reliable indicator of legislative intent.' [Citation.] We give the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation]. 'In other words, "'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness."'"' [Citation.] We are also mindful of 'the general rule that civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose.' [Citations.] 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.] 'Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation.' [Citation.]" (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529–530.)

2. Section 1717 and "Action On A Contract"

Section 1717, subdivision (a) provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] Where a contract provides for attorney's fees, as set forth above, that provision shall be

23

construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract." Neither party was represented by counsel when executing the Sale Contract. Thus, pursuant to section 1717, the attorney fees provision in the Sale Contract applies to the entire contract and to the parties. (See *Reyes, supra*, 76 Cal.App.5th at p. 617.)

The parties do not dispute that all the claims here concern the alleged breach of express and implied warranties arising from the sale of the Vehicle. Therefore, the claims are "on a contract" and subject to section 1717. Further, under section 1717, subdivision (b)(1), defendant is "the party prevailing on the contract." (See *ibid.* ["the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract"].) Accordingly, absent a prohibition, defendant would be entitled to recover attorney fees in this action. We thus consider plaintiffs' contention that the fee-shifting attorney fee provisions set forth in the Magnuson-Moss Act, the Song-Beverly Act, and the CLRA nonetheless prohibit an award of attorney fees here.

### 3. Magnuson-Moss Act

The Magnuson-Moss Act allows for the recovery of attorney fees only by a prevailing consumer. The act states, in relevant part: "If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on

24

actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action . . . ."  (15 U.S.C. § 2310(d)(2).)

Federal and state courts have concluded that a prevailing seller is not entitled to an award of attorney fees under this Act. (*Jones v. Fleetwood Motor Homes* (N.D.Ill. 2000) 127 F.Supp.2d 958, 971 ["The attorney fee provision of Magnuson-Moss is limited to awarding fees to prevailing consumers"]; *State Farm Fire & Casualty Co. v. Miller Electric Co.* (1992) 231 Ill.App.3d 355, 359–360 [rejecting defendant manufacturer's request for attorney fees under Magnuson-Moss Act; "Fee-shifting statutes are enacted to encourage certain classes of persons to assert their rights"].)  Further, courts have denied the recovery of attorney fees to prevailing sellers on Magnuson-Moss claims even where a statute analogous to section 1717 would otherwise allow for the recovery of such fees.  (See, e.g., *Traynor v. Winnebago Industries, Inc.* (D. Ariz. 2006) 422 F.Supp.2d 1100, 1101 [seller who prevailed on plaintiff's Magnuson-Moss Act claim was not entitled to recover attorney fees under an Arizona statute that provided for the award of fees in cases "'arising out of contract'"]; *Hanson v. Signer Motors, Inc.* (1990) 105 Ore.App. 74, 80 [rejecting prevailing manufacturer's argument for award of attorney fees under Magnuson-Moss Act and Oregon law substantially similar to § 1717; "federal law protects *consumers* and is intended to encourage consumer actions for breach of warranty by awarding attorney fees if the *consumer* prevails. Manufacturers, retailers and suppliers are not consumers and cannot receive attorney fees under the act.  [Citations.]  [An Oregon law similar to section 1717] cannot be applied to defeat

25

the consumer protection purpose and underlying policies of a federal statute"].) We find the reasoning of these cases persuasive and conclude that section 1717 does not permit the recovery of attorney fees by a defendant who prevails against a plaintiff consumer on a Magnuson-Moss Act claim.

    4.    <u>Song-Beverly Act</u>

The Song-Beverly Act also allows for the awarding of attorney fees to a prevailing buyer. It provides: "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." (§ 1794, subd. (d).) Although the Act is silent as to whether a prevailing defendant may be awarded such fees, a necessary corollary to the Legislature's decision to authorize awards only for prevailing plaintiffs is to preclude defendants from such an award. (See *Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1059–1060 [discussing the Unruh Civil Rights Act (§ 51 et seq.) and § 54.3; "Although sections 52 and 54.3 do not literally state that prevailing defendants may not receive fee awards," allowing prevailing defendants to recover fees "would undermine the purpose of the unilateral fee-shifting provisions—to encourage enforcement of the statutes without fear of an adverse fee award in the event the enforcement action fails"]; see also *Department of Fair Employment and Housing v. Cathy's Creations, Inc.* (2020)

54 Cal.App.5th 404, 413–414 [holding that Gov. Code, § 12974, a unilateral fee statute, prevailed over Code Civ. Proc., § 1021.5, a reciprocal fee statute; "[t]he Legislature knows how to create reciprocal attorneys' fee provisions when it chooses to do so; its election of a unilateral fee provision is intentional"].)

The unilateral nature of the Song-Beverly Act therefore conflicts with section 1717, which provides for the awarding of fees to a prevailing party, regardless of whether it is a plaintiff or defendant. "The rules we must apply when faced with two irreconcilable statutes are well established. 'If conflicting statutes cannot be reconciled, later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones [citation].' [Citation.] But when these two rules are in conflict, the rule that specific provisions take precedence over more general ones trumps the rule that later-enacted statutes have precedence. [Citations.]" (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960–961 (*State Dept. of Public Health*).)

Section 1717 was enacted in 1968. (Stats. 1968, ch. 266, § 1.) The Song-Beverly Act was enacted later, in 1970. (Stats. 1970, ch. 1333, § 1.) The Song-Beverly Act, which addresses the availability of fees for breaches of a warranty, is more specific than section 1717. We assume the Legislature was aware of the general reciprocal attorney fees provision in section 1717 when it enacted the Act, and expressly chose to codify a unilateral fee provision in favor of consumer plaintiffs. (See *State Dept. of Public Health*, *supra*, 60 Cal.4th at p. 962.) We therefore conclude the Legislature intended for the unilateral fee provisions in the Song-Beverly Act to act as an exception to the

27

ability of a court to award attorney fees to prevailing nonconsumer defendants under section 1717.

Defendant's citation to *Murillo, supra*, 17 Cal.4th 985 is unpersuasive. In *Murillo*, the plaintiff buyer purchased a motorhome from an authorized retailer. (*Id.* at p. 988.) The vehicle was subject to an express warranty by the defendant seller. (*Ibid.*) The buyer alleged defects with the vehicle and sought repairs. (*Ibid.*) Finding the repairs unsatisfactory, the buyer then sued the seller, alleging violation of the Song-Beverly Act, but the seller prevailed on the claim. (*Id.* at pp. 988–989.) The seller then filed a memorandum of costs, which the buyer moved to strike. (*Id.* at p. 989.) The trial court denied the buyer's motion, and the Court of Appeal affirmed. (*Ibid.*)

On appeal, our Supreme Court examined the interplay between Code of Civil Procedure section 1032, subdivision (b) and section 1794, subdivision (d) of the Song-Beverly Act and held: "Because [Code of Civil Procedure] section 1032[, subdivision ](b) grants a prevailing party the right to recover costs '[e]*xcept as otherwise expressly provided by statute*' (italics added), we must first determine whether . . . section 1794[, subdivision ](d) provides an 'express' exception. Although . . . section 1794[, subdivision ](d) gives a prevailing buyer the right to recover 'costs and expenses, including attorney's fees,' the statute makes no mention of prevailing sellers. In other words, it does not *expressly* disallow recovery of costs by prevailing sellers; any suggestion that prevailing sellers are prohibited from recovering their costs is at most *implied*. Accordingly, based on the plain meaning of the words of the statutes in question, we conclude . . . section 1794[, subdivision ](d) does not provide an 'express' exception to the general rule permitting a seller, as a prevailing

party, to recover its costs under [Code of Civil Procedure ]section 1032[, subdivision ](b)." (*Murillo, supra*, 17 Cal.4th at p. 991.)

Defendant contends the reasoning in *Murillo* applies to allow the recovery of attorney fees here. Our Supreme Court, however, expressly declined to expand its holding to attorney fees: "Nothing in our opinion addresses that issue. Sellers are not seeking attorney fees, and there is no 'default' attorney fee recovery provision akin to [Code of Civil Procedure] section 1032[, subdivision ](b). Indeed, the law is to the contrary. (See [Code Civ. Proc.,] § 1021 ['Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . .'].)" (*Murillo, supra*, 17 Cal.4th at p. 999.) Moreover, in a subsequent opinion, our Supreme Court indicated that, in the context of Code of Civil Procedure section 998, "the Legislature has in certain limited instances made a policy decision to treat prevailing plaintiffs and prevailing defendants differently for purposes of attorney fees and other costs. [Code of Civil Procedure s]ection 998 takes these differences as it finds them, applying them for purposes of postoffer costs as if the defendant were the prevailing party but neither expanding nor contracting the categories of costs to which a prevailing defendant in the circumstances would be entitled. Thus, if the case is governed by a statute under which a prevailing plaintiff but not a prevailing defendant is entitled to attorney fees, then a defendant who does not prevail but is nonetheless entitled to its postoffer costs under [Code of Civil Procedure] section 998 is not entitled to its postoffer attorney fees as part of those costs, even though the prevailing plaintiff may obtain its preoffer attorney fees as part of its preoffer costs."

(*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1115, fn. 3, citing *Murillo, supra*, 17 Cal.4th at p. 994.)  Thus, when the Legislature has treated prevailing plaintiffs and prevailing defendants differently for attorney fees, more general statutes, such as Code of Civil Procedure section 998, do not control. (*Ibid.*)

Indeed, other Courts of Appeal have concluded that section 1717 does not supersede more specific statutes involving one-sided attorney fees provisions.  (See, e.g., *Dane Elec Corp., USA v. Bodokh* (2019) 35 Cal.App.5th 761, 774 ["unless the trial court finds the wage claim was brought in bad faith, [Labor Code] section 218.5[, subdivision ](a) prohibits, as a matter of law, an award of attorney fees to a prevailing party for successfully defending a wage claim that overlaps with claims subject to a contractual prevailing party attorney fees provision"]; *Wood v. Santa Monica Escrow Co.* (2007) 151 Cal.App.4th 1186, 1189–1191 [elder abuse statute, Welf. & Inst. Code, § 15657.5, subd. (a), provided for award of reasonable attorney fees to prevailing plaintiff, not prevailing defendant; rejecting defendant's claims for fees as prevailing party on tort causes of action under § 1717 which arose from same transaction]; *Carver v. Chevron U.S.A.* (2004) 119 Cal.App.4th 498, 503 ["we conclude the unilateral fee-shifting provision of [Business and Professions Code] section 16750, subdivision (a) prohibits an award of attorney fees for successfully defending Cartwright Act [(Bus. & Prof. Code, § 16720 et seq.)] and non-Cartwright Act claims that overlap"]; *Carver v. Chevron U.S.A.* (2002) 97 Cal.App.4th 132, 144 [fee provision in lease between corporation and franchisees did not cover corporation's fees incurred in defending against Cartwright Act claims; attorney fee provision of Cartwright Act, Bus. & Prof.

Code, § 16750, subd. (a), provides for fees to prevailing plaintiffs only]; see also *Covenant Mutual Ins. Co. v. Young* (1986) 179 Cal.App.3d 318, 324–325, fn. omitted [rejecting extension of § 1717's reciprocity to action for breach of warranty of authority under § 3318, a unilateral, pro-plaintiff fee shifting statute; "Through enactment of section 1717 the Legislature has evidenced it regards private imposition of unilateral fee-shifting to be *against* the public interest. At the same time, in literally scores of specific areas of the law it has intentionally imposed one-sided fee-shifting as a means of *advancing* the public interest"].)

Finally, maxims of jurisprudence are contrary to defendant's interpretation. Section 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Thus, an agreement between a dealership and a purchaser that would provide attorney fees to the prevailing dealership against the purchaser who brought a Song-Beverly Act claim would be proscribed as contravening public policy.

5.    CLRA

We next consider whether defendant was entitled to attorney fees as the prevailing party on the CLRA claim. The CLRA, which was enacted in 1970 (Stats. 1970, ch. 1550, § 1), provides for attorney fees as follows: "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section. Reasonable attorney's fees may be awarded to a prevailing defendant upon a finding by

31

the court that the plaintiff's prosecution of the action was not in good faith." (§ 1780, subd. (e).) Here, there is no finding by the trial court that plaintiffs prosecuted the action in bad faith.

For all the reasons we conclude section 1717 does not allow a prevailing defendant on a Song-Beverly Act claim to be awarded attorney fees, we conclude that, absent a finding of bad faith prosecution by the trial court, such a defendant also is not entitled to an award of attorney fees for prevailing on a CLRA claim.[14]

6.     The UCL and False Advertising Law claims

Finally, we consider whether defendant was entitled to recover attorney fees as the prevailing party on plaintiffs' claims for violations of the UCL and the false advertising law. Because these causes of action were premised on, and overlapped with, plaintiffs' Magnuson-Moss Act, Song-Beverly Act, and CRLA causes of action, we conclude that defendant cannot recover attorney fees under section 1717. (See *Carver v. Chevron U.S.A., Inc., supra*, 119 Cal.App.4th at p. 505 [finding "prevailing defendant cannot use an alternative contractual fee provision to

---

[14]     To the extent the *Reyes* court suggested that a prevailing defendant is entitled to an award of attorney fees under the CLRA and Song-Beverly Act (see *Reyes, supra*, 76 Cal.App.5th at p. 620 & fn. 11), any such suggestion is dicta because *Reyes* concerned a prevailing plaintiff. (*Id.* at p. 616; see *Garfield Medical Center v. Belshe* (1998) 68 Cal.App.4th 798, 806 ["Dicta consists of observations and statements unnecessary to the appellate court's resolution of the case"].) To the extent such reasoning was not dicta, we disagree, as explained above.

claim entitlement to fees for overlapping compensable and noncompensable claims"].)

## IV.  DISPOSITION

The order awarding attorney fees is reversed.  The summary judgment and order awarding other costs are affirmed. The parties are to bear their own costs.

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.