Filed 10/23/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HAAMID KHAN,<br><br>    Plaintiff and Respondent,<br>v.<br><br>COINBASE, INC.,<br><br>    Defendant and Appellant. | A172063<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-24-615202) |

Coinbase, Inc. operates an online business for customers who buy, sell, transfer and store digital currencies. In 2022, Haamid Khan created a user account so that he could access Coinbase's services. In June 2024, Khan filed the underlying action to enjoin Coinbase from engaging in deceptive business practices, in violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.; UCL) and false advertising law (*id.*, § 17500 et seq.; FAL). Coinbase responded with a petition to compel contractual arbitration, which the trial court denied pursuant to *McGill v. Citibank*, N.A. (2017) 2 Cal.5th 945, 955 (*McGill*). The court's decision was supported by findings that Khan is seeking public injunctive relief, and that the agreement's purported waiver of Khan's right to seek such relief is unenforceable under California law. (See *McGill,* at p. 961.) We affirm.

1

# BACKGROUND

## *Khan's Complaint*

Khan alleges that Coinbase charges customers a "hidden" fee to conduct transactions on Coinbase's website, which Coinbase refers to as a "Spread Fee." According to the complaint, this fee is hidden from users through a combination of tactics. For example, when a customer seeks to make a purchase, the spread fee is not displayed on any of the screens that the customer reviews when placing an order. Nor is the spread fee included in the amount of the "Coinbase fee" that is displayed to consumers. Instead, Khan alleges, a customer is first quoted market price to purchase shares of various digital currencies, and after the customer indicates how much of a particular currency he or she wants to purchase, the customer is shown an "Order Preview" screen summarizing the proposed transaction. On this screen, a slightly higher "Price" is listed, one that includes the undisclosed spread fee. On a typical buy or sell transaction, Coinbase's spread fee is one percent; on transactions converting one digital currency to another, the spread fee is typically two percent. The only way for a customer in the course of these transactions to discover that Coinbase is charging this added fee is if the customer clicks a "tooltip" icon next to the word "Price."

Khan alleges that Coinbase designed its platform to take advantage of less sophisticated customers by charging a spread fee only to consumers who use Coinbase's "default trading option," and not imposing a spread fee on customers who select the platform's "Advanced" trading option. Khan also alleges that consumers are deceived by Coinbase's platform. He recounts complaints that consumers made after discovering their transactions included a hidden fee. And he avers that he personally used Coinbase's

default trading platform and was unaware at the time that he was being charged a hidden spread fee.

Khan incorporates his factual allegations into causes of action for violating the UCL and the FAL. As to each claim, Khan alleges that Coinbase deceptively leads reasonable consumers to believe that the price quoted for a cryptocurrency transaction is the market price and that the "Coinbase fee" quoted to the consumer includes all fees the consumer will pay to complete the transaction. In fact, Khan alleges, "the 'price' Coinbase has quoted to and charged—and continues to quote to and charge—consumers for cryptocurrency trades on its default trading platform includes a hidden Spread Fee[,] and the 'Coinbase fee' understates Coinbase's true fees by excluding the Spread Fee." As to both of his causes of action, Khan seeks an injunction prohibiting Coinbase from continuing to engage in these unlawful practices.

***The Arbitration Agreement***

Before conducting a transaction with Coinbase, a customer must consent to the terms of a detailed user agreement. The appellate record contains two versions of the user agreement, a November 2022 agreement that was in effect when Khan created his account, and a May 2024 version that Khan attached to his complaint. Both versions incorporate an arbitration agreement, and three sections of the arbitration agreement are relevant to this appeal.[1]

---

[1] In their respective appellate briefs, the parties cite different versions of the user agreement. If they disagree about which version governs, we need not resolve the issue since the relevant provisions are the same in both versions of the arbitration agreement.

3

Section 1.1 states that, with discrete exceptions, "any dispute, claim, [or] disagreements" relating to the use of Coinbase's services "will be resolved by binding arbitration, rather than in court." The term " 'dispute' " is construed broadly and includes disputes that arose before the existence of the user agreement and after its termination.[2]

Section 1.3 is captioned as a "Waiver of Class and Other Non-Individualized Relief." This section contains a purported waiver of all rights to have a dispute brought or resolved on a "class, collective, representative, or mass action basis." It states that "only individual relief is available," and it precludes any customer or user from consolidating his or her dispute with that of another customer or user. Section 1.3 contains additional language expressly prohibiting an arbitrator from awarding non-individualized relief: "Subject to this Arbitration Agreement, the arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by the party's individual claim." And section 1.3 contains a severability clause, which provides that if the waiver is deemed "unenforceable as to a particular claim or request for relief (such as a request for public injunctive relief)," that claim or request for relief shall be severed and litigated in court.

Section 1.6 addresses the powers of the arbitrator, which includes authority to resolve disputes pertaining to the construction and scope of the arbitration agreement, with specified exceptions. Pertinent here, all disputes relating to the purported waiver of class or other non-individualized relief contained in section 1.3 of the arbitration agreement "shall be decided by a court of competent jurisdiction and not by an arbitrator."

---

[2] Boldface and some capitalization that appear in the arbitration agreement are omitted from provisions that we quote in this opinion.

4

*Petition to Compel Arbitration*

Coinbase filed a petition to compel arbitration pursuant to the Federal Arbitration Act (9 U.S.C. § 1 et seq.; FAA). It argued that the arbitration agreement is presumptively valid under the FAA, and that Khan's claims fall within its broad scope. Coinbase acknowledged that it could not compel Khan to arbitrate a claim for public injunctive relief, but it argued that Khan's claims seek only private relief on behalf of himself and a group of similarly situated individuals. Khan opposed the petition on the ground that he is seeking an injunction that prohibits unfair business practices in order to protect the public, which falls within the definition of public injunctive relief. Relatedly, Khan argued the arbitration agreement is invalid to the extent it purports to strip consumers of their statutory right to seek public injunctive relief under California's consumer protection laws.

On November 21, 2024, the trial court denied Coinbase's petition in a written order. As an initial matter, the court found the arbitration agreement does indeed contain an impermissible waiver of the right to obtain public injunctive relief, which is invalid under *McGill*, *supra*, 2 Cal.5th 945. In light of the severability provision in section 1.3, the court determined that "the unenforceability of this waiver means that claims for public injunctive relief will be litigated in court." Next, the court found that Khan is indeed asserting claims for public injunctive relief. "[T]he injunctive relief sought is not limited to private parties or the putative class and will benefit the public at large," the court found. Citing *Kramer v. Coinbase* (2024) 105 Cal.App.5th 741, 750–751 (*Kramer*), the court further observed that the "nature of the harm alleged" and "the statutory basis" for Khan's claims show that he is seeking public injunctive relief. Because Khan asserts claims for public

injunctive relief, he cannot be required to arbitrate them, the court concluded.

## DISCUSSION

Coinbase contends the order denying its petition to compel arbitration must be reversed because the trial court misapplied *McGill* in concluding Khan's claims seek public injunctive relief. When, as here, the evidence is not in conflict, the denial of a petition to compel arbitration is reviewed de novo. (*Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1196.) While we agree with Coinbase that this appeal is governed by *McGill*, we conclude that under *McGill*, Coinbase's petition was properly denied.

## I.

*McGill* was a class action against Citibank, N.A. (Citibank) for unlawful business practices relating to the operation of its credit card program. (*McGill*, *supra*, 2 Cal.5th at p. 953.) The plaintiff alleged violations of the UCL, FAL, Consumers Legal Remedies Act (CLRA), and other laws, and her request for relief included, "among other things, an injunction prohibiting Citibank from continuing to engage in its allegedly illegal and deceptive practices." (*McGill*, at p. 953.) The question before the California Supreme Court was whether a provision in the parties' arbitration agreement that purported to waive the right to seek public injunctive relief in any forum was valid and enforceable against the plaintiff. (*McGill*, at p. 956.) In concluding the provision was not valid, the *McGill* Court resolved several issues that are relevant to the present appeal.

*First*, the *McGill* Court addressed whether the plaintiff was seeking public injunctive relief against Citibank. The Court explained that the injunctive relief available under California's consumer protection statutes can be either public or private, and it used its prior decisions to clarify the

distinction between these two types of relief: "public injunctive relief . . . is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public"; by contrast, relief "that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." (*McGill*, at p. 955, citing *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1077, 1080, and *Cruz v. Pacific Care Health Systems, Inc.* (2003) 30 Cal.4th 303, 315–316.) The *McGill* Court also clarified that the determination whether a plaintiff is seeking public or private injunctive relief can be made based solely on the complaint's allegations and prayer for relief. (*McGill*, at pp. 956–958.)

In the *McGill* plaintiff's complaint, each statutory cause of action was supported by allegations that Citibank had engaged in an advertising campaign that relied on false and misleading statements, that this conduct violated consumer protection laws, and that Citibank continued to engage in the unlawful conduct. And as to each claim, the plaintiff requested an order enjoining Citibank from continuing to violate the statute. (*McGill*, *supra*, 2 Cal.5th at pp. 956–957.) These allegations established the plaintiff was seeking public injunctive relief because they adequately specified the actual nature of the injunctive relief she sought and were sufficient to " 'explain how the public at large would benefit from' that relief." (*Id*. at p. 957.)

*Second*, the *McGill* Court determined that public injunctive relief remains a remedy that is available to private plaintiffs suing for violations of California's consumer protection statutes, notwithstanding amendments to those laws that require private plaintiffs to have suffered individual injury. (*McGill*, *supra*, 2 Cal.5th at pp. 958–959.) As the Court explained, a private plaintiff who has suffered an injury in fact due to a violation of the UCL or

7

FAA is filing the lawsuit "on his or her own behalf, not 'on behalf of the general public,' " even if one of the remedies sought is injunctive relief, " 'the primary purpose and effect of' which is 'to prohibit and enjoin conduct that is injurious to the general public.' " (*McGill*, at p. 959.) By the same token, when a private plaintiff brings his or her claim as a class action on behalf of himself and a defined group, that plaintiff retains the right to seek public injunctive relief that primarily benefits the public, the Court found. (*Id.* at pp. 960–961.)

*Third*, the *McGill* Court concluded that the provision in the parties' arbitration agreement that purported to waive the statutory right to seek public injunctive relief in any forum was invalid and unenforceable under California law. (*McGill*, *supra*, 2 Cal.5th at p. 961.) Specifically, the Court applied Civil Code section 3153, which provides: "Any one may waive the advantage of a law intended solely for their benefit. But a law established for a public reason cannot be contravened by a private agreement." Pursuant to section 3153 and attendant caselaw, waiver of a statutory right is permissible only if the " 'statute's "public benefit . . . is merely incidental to [its] primary purpose," ' " and " ' "any public purpose" ' " would not be seriously compromised by the waiver. (*McGill*, at p. 961.) A waiver of the statutory right to seek public injunctive relief available under the UCL, CLRA, and FAL does not meet these requirements because the " 'evident purpose' " of public injunctive relief is " 'to remedy a public wrong,' 'not to resolve a private dispute' [citation], and any benefit to the plaintiff requesting such relief 'likely . . . would be incidental to the general public benefit of enjoining such a practice.' " (*McGill*, at p. 961.)

8

## II.

Applying *McGill*, we affirm the order denying Coinbase's petition. To start, we conclude Khan seeks public injunctive relief to enjoin violations of the UCL and FAL. Khan alleges that particular Coinbase conduct in operating its online cryptocurrency exchange constitutes a deceptive business practice that is likely to deceive or confuse the public; he alleges this unlawful conduct is ongoing; and he seeks injunctive relief solely to prohibit Coinbase from continuing to violate the statutes in this manner. These allegations establish the public nature of the relief Khan seeks, and how that relief will benefit the general public if he is able to establish his claim. (*McGill*, *supra*, 2 Cal.5th at pp. 956–958.)

As other courts applying *McGill* have found, a complaint to enjoin future violations of California's consumer protection laws seeks public injunctive relief when the relief sought is not limited to the plaintiff or a defined group, but is oriented to and for the benefit of the public at large. (*Mejia v. DACM Inc*. (2020) 54 Cal.App.5th 691, 702–704 (*Mejia*) [complaint to prohibit motor vehicle dealership from violating financial disclosure law in future transactions with customers sought public injunctive relief]; *Maldonado v. Fast Auto Loans, Inc.* (2021) 60 Cal.App.5th 710, 720–722 (*Maldonado*) [complaint to prohibit ongoing unlawful lending practices sought public injunctive relief]; *Ramsey v. Comcast Cable Communications, LLC* (2023) 99 Cal.App.5th 197, 212 (*Ramsey*) [complaint to prohibit cable service provider from engaging in deceptive conduct sought public injunctive relief that would primarily benefit current and future subscribers].) Khan's complaint seeks precisely this type of relief. It seeks to enjoin practices that, Khan alleges, mislead members of the public who seek to buy, sell, or convert digital currency on Coinbase's platform.

9

Further, allegations regarding the specific injuries suffered by Khan and other similarly situated users of the Coinbase platform are not inconsistent with our conclusion that the relief Khan seeks is public injunctive relief. (See *McGill*, *supra*, 2 Cal.5th at pp. 958–959.) As the trial court observed, but Coinbase persistently ignores, the only relief Khan seeks in this action is an injunction to bar Coinbase from continuing to operate its publicly available internet platform in a manner that violates consumer protection laws. Khan does not seek damages or equitable relief focused on his own injuries or the injuries suffered by an identifiable group of Coinbase customers. (Compare *Clifford v. Quest Software Inc.* (2019) 38 Cal.App.5th 745, 753 [plaintiff was the only express beneficiary of requested injunctive relief, and defendant's current employees, not the public at large, were the only potential beneficiaries]; *Torrecillas v. Fitness Internat., LLC* (2020) 52 Cal.App.5th 485, 500 [same].)

We also find that the purported waiver of Khan's right to seek a public injunction in section 1.3 of the arbitration agreement is invalid under *McGill*. The statutory right to seek public injunctive relief for violations of the UCL and FAL is intended primarily to benefit the public, and allowing a private waiver of this right would seriously compromise the public purposes these statutes are intended to serve. (*McGill*, *supra*, 2 Cal.5th at p. 961.) The fact that the waiver was included in an arbitration agreement does not render it valid, as the *McGill* Court explained: The FAA places arbitration agreements " 'on an equal footing with other contracts' " and requires such agreements to be enforced " 'according to their terms.' " (*McGill*, at pp. 961–962.) However, this requirement is qualified by the FAA's savings clause, which permits courts to declare arbitration agreements unenforceable " ' "upon such grounds as exist at law or in equity for the revocation of any contract." ' " (*McGill*, at

10

p. 962.)  The principle that a law established for a public purpose cannot be contravened by private agreement is a generally applicable contract defense, not a defense that applies only to arbitration or that derives its meaning from the fact an arbitration agreement is at issue.  (*Ibid.*)

Finally, as in *McGill*, the record shows that these parties did not agree that claims for public injunctive relief must be submitted to arbitration.  Because Khan's claims under the UCL and FAL do in fact seek public injunctive relief, the order denying Coinbase's petition was properly denied.

**III.**

Contesting this result, Coinbase does not dispute that its arbitration agreement contains an invalid waiver of the right to seek public injunctive relief.  Instead, it attempts to render the invalid waiver irrelevant by arguing Khan's complaint seeks purely private relief.  According to Coinbase, the relief sought in the complaint is private because Khan seeks to compel Coinbase to make additional disclosures to existing customers, and thus challenges conduct that is not directed at the public.

Coinbase mischaracterizes Khan's complaint, which does *not* seek an order compelling Coinbase to make any disclosures specifically to Khan or any defined group of individuals.  Nor does Khan seek monetary relief for injuries sustained by users of the Coinbase platform, including himself, who were once deceived by the allegedly unlawful business practices.  Khan alleges that Coinbase's misrepresentations and material omissions violate consumer protection laws that benefit the public, and he seeks an injunction requiring Coinbase to stop violating those laws.  Such an injunction "constitutes public injunctive relief because it would affect the broader public."  (*Kramer*, *supra*, 105 Cal.App.5th at p. 753.)

11

Coinbase objects that Khan's allegations are conclusory and should not be accepted at face value. According to Coinbase, the injunction Khan seeks cannot possibly benefit the public because only existing Coinbase customers can access the platform on which the allegedly unlawful conduct occurs. We perceive two material flaws in this logic.

*First*, we are not persuaded that Coinbase can insulate itself from a public injunction simply by requiring a consumer to create a user account before engaging with Coinbase and its platform. In our view, the unlawful business practice that Khan describes and seeks to enjoin affects the general public because any member of the public may access and elect to use Coinbase's online platform. True, a potential Coinbase customer must first create a user account before attempting to make a trade, but this is simply the online equivalent of driving to, parking at, and walking into a brick-and-mortar store. Creating a user account is the threshold a potential customer must cross before transacting business with Coinbase, and as the trial court observed in the appealed order, Coinbase did not "demonstrate that it restricts access to its services in a meaningful way," or that "any member of the public cannot simply create credentials and access Coinbase's services." (See generally *Olosoni v. HRB Tax Group* (N.D.Cal. Mar. 24, 2020, No. 19cv-03610-SK) 2020 U.S. Dist. Lexis 259489 *5–*6, *10 [plaintiffs stated a claim for public injunctive relief against operator of online tax filing service "based on the way in which a taxpayer viewed Defendant's website and then interacted with the website"].)

And, to continue the analogy to brick-and-mortar retail, we would surely say that an injunction preventing a grocery store from advertising one price in the grocery aisle, while charging a higher price at the register, was a public injunction even though it protected only customers who entered the

12

store to buy groceries.  (Cf. *Veera v. Banana Republic*, *LLC* (2016) 6 Cal.App.5th 907, 918–922 [in-store advertising of a 40% discount on merchandise, which customers learned did not apply to certain items only after selecting them for purchase and bringing them to the cash register to pay, is evidence of a UCL and FAA violation].)  Coinbase suggests the threshold of establishing a user account is materially different from walking into a store because signing up for a user account requires a potential customer to sign a contract agreeing to arbitrate claims, but of course no agreement to arbitrate a claim seeking public injunctive relief is enforceable, so we do not see this difference as dispositive.

*Second*, we disagree with Coinbase's underlying assumption that conduct directed at a defendant's customers can never support a request for public injunctive relief.  Such a rule would not square with *McGill*, which expressly confirms that a plaintiff who files a class action on behalf of customers allegedly injured by a business's deceptive practices may nonetheless seek public injunctive relief.  The pertinent inquiry focuses on the purpose of the injunction.  (*McGill*, *supra*, 2 Cal.5th at p. 955.)  When the primary purpose of an injunction is to prohibit an ongoing violation of consumer protection laws, the relief sought is usually public relief because the benefit to the plaintiff or a group of similarly situated individuals is not materially different from the benefit that inures to the broader public.  By contrast, when the primary purpose of the injunction is to resolve a dispute by redressing or preventing injury to the individual plaintiff or an ascertainable group of similarly situated persons, the plaintiff is seeking a private injunction.  The injunction Khan seeks in this case falls squarely into the former category.  Khan seeks to enjoin Coinbase from continuing to engage in unlawful practices pertaining to the operation of an online

cryptocurrency business that is accessible to members of the public. Neither the complaint's allegations nor Khan's prayer for relief are narrowly focused on his specific injury, nor does he seek a specific change to Coinbase's platform that would benefit existing account holders but not members of the public who become future users of the Coinbase platform.

Coinbase relies on two other cases in which it was sued for violating consumer protection laws. (See *Kramer*, *supra*, 105 Cal.App.5th 741; *Woody v. Coinbase Global, Inc.* (N.D.Cal. Oct. 17, 2023, No. 23-cv-00190-JD) 2023 U.S. Dist. Lexis 186426 (*Woody*), reversed in part on another ground in *Woody v. Coinbase Global, Inc.* (9th Cir. Oct. 21, 2024, No. 23-3584) 2024 U.S. App. Lexis 26510.) We agree these cases are relevant, but we disagree that they support Coinbase's appellate arguments.

*Kramer* involved a complaint against Coinbase for violating the UCL, FAL, and CLRA. (*Kramer*, *supra*, 105 Cal.App.5th at p. 744.) The plaintiffs alleged that Coinbase misrepresented its security features with respect to customer accounts, and expressly sought " 'public injunctive relief.' " (*Id*. at p. 745.) Coinbase moved to compel arbitration, contending that the plaintiffs were actually seeking private relief. The trial court denied Coinbase's petition, and a different panel of this court affirmed that order. (*Id*. at p. 744.) Coinbase argued on appeal that allegations in the complaint regarding harm suffered by the individual plaintiffs, whose Coinbase accounts had been hacked, precluded the plaintiffs from also seeking public injunctive relief. (*Id*. at p. 750.) Rejecting this argument, the *Kramer* court emphasized that the plaintiffs' complaint did not seek relief for plaintiff-specific injuries. Instead, plaintiffs sought an injunction to " 'prohibit a business from engaging in unfair or deceptive practices and marketing,' " an injunction that has " 'the primary purpose and effect of protecting the public,

14

and thus falls within *McGill's* definition of public injunctive relief.' " (*Kramer*, at p. 750, quoting *Ramsey*, *supra*, 99 Cal.App.5th at p. 206.)

*Kramer* reinforces our conclusions in this case. Allegations in Khan's complaint regarding the harm he and other similarly situated individuals suffered do not override the fact that the only relief Khan seeks is an injunction barring Coinbase from continuing to engage in practices that violate the UCL and FAL. This prayer, considered in conjunction with the allegations describing Coinbase's allegedly deceptive conduct, demonstrates that Khan is seeking relief that will primarily benefit the public. Indeed, it appears indisputable that the injunction Khan seeks will not primarily benefit him, as he has already discovered Coinbase's allegedly hidden fee. (See, e.g., *McGill*, *supra*, 2 Cal.5th at p. 955; *Meja*, *supra*, 54 Cal.App.5th at p. 703.)

Coinbase construes *Kramer* differently. It argues that the relief sought in *Kramer* was public injunctive relief solely because that case involved allegations that Coinbase made deceptive representations about its security features in advertisements that were disseminated to the public at large. Here, Coinbase argues, Kahn cannot meet the "standard" that *Kramer* establishes because only existing Coinbase customers encounter the statements and omissions that Khan characterizes as misleading. This argument is without merit. *Kramer* did not establish a new or different standard, but applied *McGill*, as we do here. It is true that the facts in *Kramer* involved allegedly deceptive representations Coinbase made in public-facing advertisements, but *Kramer* does not hold or intimate that Coinbase can avoid lawsuits for public injunctive relief so long as its misleading statements do not appear in public advertisements. (See also *Maldonado*, *supra*, 60 Cal.App.5th at p. 721 [*McGill* is not limited to cases in

15

which plaintiffs seek to enjoin false or misleading advertising]; *Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 215, 227–232 [injunction sought under Fair Employment and Housing Act may be public injunction governed by *McGill*].)

Coinbase also relies on *Kramer* for a distinction the case draws in characterizing private and public injunctions. An injunction against "conduct directed solely at existing customers who were similarly situated to the plaintiffs" is a private injunction, and an injunction against "conduct directed at potential customers or the general public" is a public injunction, the *Kramer* court explains. (*Kramer*, *supra*, 105 Cal.App.5th at p. 751.) Coinbase attempts to categorize Khan's requested relief as private by repeatedly characterizing the injunction he seeks as for the protection of "existing customers." This is a rhetorical sleight of hand. Nothing about Khan's complaint suggests that his injunction would primarily benefit individuals who were already Coinbase customers when the complaint was filed. Coinbase is instead seeking to corral under the label of "existing customer" any member of the public who *in the future* pursues the possibility of transacting with Coinbase to the point of being prepared to buy, sell, or convert digital currency on the Simple Trade platform. We view these individuals as potential customers or future customers; they may—or may not—also be Coinbase's "existing customers." Thus, the dichotomy the *Kramer* court draws between private and public injunctions undermines, rather than supports, Coinbase's argument.

*Woody*, *supra*, 2023 U.S. Dist. Lexis 186426, is also consistent with our conclusion. The *Woody* plaintiffs alleged common law and statutory claims against Coinbase for reneging on a promise to deliver new currencies to a specific group of existing customers. (*Id.* at p. *1.) As relief for these state

16

law claims, plaintiffs sought "damages and equitable relief on behalf of a putative class of Coinbase customers, as well as an injunction barring 'the unlawful practices alleged' in the complaint.' " (*Id.* at pp. *9–*10.) These were not requests for public injunctive relief under *McGill*, the federal district court found, because the relief stood to benefit only existing customers who were similarly situated to plaintiffs, and not the general public. (*Id.* at p. *10.) In contrast to *Woody*, the statutory violations that Khan alleges do not arise from a promise that Coinbase made to a specific group of existing customers, but from the manner in which Coinbase describes its prices and fees to all potential customers on the Simple Trades platform. The public stands to benefit from the requested relief, if it prevents Coinbase from continuing to engage in the alleged deception.

Coinbase seems to assume that an injunction can either benefit a business's existing customers or it can benefit the public generally, but it cannot do both. Pertinent authority holds otherwise. (*Ramsey*, *supra*, 99 Cal.App.5th 197.) The *Ramsey* plaintiff alleged that Comcast violated consumer protection statutes by failing to disclose and misrepresenting the true nature of its subscription service pricing, and the complaint sought injunctive relief to halt the unlawful practices and prevent future injury to the general public. (*Id.* at pp. 201–202.) As in this case, Comcast argued that the plaintiff was seeking private injunctive relief because the allegedly unlawful practices affected only existing customers, but the *Ramsey* court found otherwise. The scope of relief sought was not so constricted, as the complaint's allegations showed that an injunction barring Comcast from continuing to engage in unlawful practices would benefit "both existing and potential Comcast subscribers." (*Id.* at p. 207.) The *Ramsey* court also found that, under California authority applying *McGill*, a public injunction can

17

primarily benefit members of the general public who are a business's subscribers and potential subscribers. (*Ramsey*, at pp. 207–209, citing *Mejia*, *supra*, 59 Cal.App.5th 691, *Maldonado*, *supra*, 60 Cal.App.5th 710.) We are persuaded by this line of authority and adopt its reasoning as further support for our decision in this case.

The Chamber of Commerce of the United States has filed an amicus curiae brief on behalf of Coinbase that urges this court to reverse the order denying arbitration based on *Hodges v. Comcast Cable Communications*, *LLC* (9th Cir. 2021) 21 F.4th 535 (*Hodges*). Coinbase also relies on multiple federal cases that applied *Hodges* to determine whether claims for violation of California consumer protection laws sought public injunctive relief. (See, e.g., *Woody*, *supra*, 2023 U.S. Dist. Lexis at p. *10; *Stout v. GrubHub Inc.* (N.D.Cal. Dec. 3, 2021, No. 21-cv-04745-EMC) 2021 U.S. Dist. Lexis 232378; *Stellman v. Google LLC & Alphabet Inc.* (*In re Google Digital Advertising Antitrust Litig.*) (S.D.N.Y. 2025) 763 F.Supp.3d 563, 575.) Coinbase and amici argue that *Hodges* and its progeny compel a finding that Khan seeks private injunctive relief in this case. We disagree.

*Hodges* was a putative class action brought by a former Comcast subscriber who alleged the defendant violated federal and state law in the way it collected and used the personal data of its subscribers. (*Hodges*, *supra*, 21 F.4th at pp. 537–538.) The plaintiff sought an injunction to require Comcast to provide more clear and explicit notice to its subscribers about the personal information it was collecting. (*Id.* at pp. 538, 548–549.) The issue before the *Hodges* court was whether the requested injunction should be classified as private or public under *McGill*. (*Hodges*, at p. 541.) In a divided decision, the court found the plaintiff was seeking only private injunctive relief.

The *Hodges* majority set forth its own definitions of private and public injunctive relief, expanding on the formulations of *McGill*. (Cf. *McGill*, *supra*, 2 Cal.5th at p. 955.) *Hodges* characterized private injunctive relief as relief that is "being sought . . . for the benefit of a discrete class of persons, or would require consideration of the private rights and obligations of individual non-parties." (*Hodges*, *supra*, 21 F.4th at p. 543.) Public injunctive relief, by contrast, the *Hodges* court defined as "prospective injunctive relief that aims to restrain future violations of law for the benefit of the general public as a whole, rather than a discrete subset of similarly situated persons, and that does so without requiring consideration of the individual claims of non-parties." (*Id.* at p. 548.) The *Hodges* court based these definitions in part on statements in *McGill* contrasting actions for public injunctive relief with class actions and representative actions. (See *Hodges*, at pp. 542–543.) As *McGill* observes, class certification requires " 'an ascertainable class and a well-defined community of interest among the class members,' " which is a requirement " ' "the general public . . ." . . . fails to meet.' " (*McGill*, *supra*, 2 Cal.5th at p. 960; see also *Hodges*, at p. 542.) And a representative action seeks disgorgement or restitution on behalf of nonparties the plaintiff purports to represent without the formalities of class certification. (*McGill*, at p. 960.)

The *Hodges* court concluded that the complaint in that case sought private relief because the plaintiff's requests stood to benefit only the defendant's cable subscribers, a group of individuals that were similarly situated to the plaintiff. (*Hodges*, *supra*, 21 F.4th at p. 549.) This relief was held not to constitute public injunctive relief because there was "simply no sense in which" it "could be said to *primarily* benefit the general public as a more diffuse whole." (*Ibid.*) In reaching this conclusion, the court rejected as

19

overbroad an interpretation of *McGill* that would define public injunctive relief to include "*any* forward-looking injunction that restrains *any* unlawful conduct." (*Id*. at p. 544.) According to the *Hodges* majority, this expansive interpretation of *McGill* had been endorsed by some California courts but was untenable. (*Hodges*, at pp. 544–546, criticizing *Meja*, *supra*, 54 Cal.App.5th 691 and *Maldonado*, *supra*, 60 Cal.App.5th 710; but see *Ramsey*, *supra*, 99 Cal.App.5th at pp. 211–212 [disagreeing with *Hodges*' construction of *Meja* and *Maldonato*].)

Whatever its merits, the *Hodges* court's perception that some California courts have construed *McGill* too broadly need not distract us here because Khan's complaint seeks public injunctive relief even under the standard articulated in *Hodges*. Khan's complaint alleges that Coinbase provides services to users of a publicly available trading platform in a deceptive and unlawful manner, and his only request for relief is a prospective injunction to prohibit Coinbase from continuing to describe its services in this deceptive and unlawful manner. These factual circumstances take the present case outside the category of cases that concerned the *Hodges* majority. The relief being sought would not benefit only a discrete class of persons, such as the class of individuals who transacted business on the Simple Trades platform in the years leading up to the filing of the complaint. Nor does the claim require the court to consider the private rights and obligations of individual nonparties, as by requiring a judicial assessment of the fairness of their individual transactions. (Cf. *Hodges*, *supra*, 21 F.4th at pp. 544–546 [criticizing cases characterizing injunctions as public that required "examination of the paperwork of each individual sale" or assessment of whether the interest rate charged in a "particular future loan agreement was unconscionable"].)

20

In sum, the allegedly unlawful business practices Khan seeks to enjoin pertain to Coinbase's continuing operation of an online currency exchange that is accessible and available to the general public. The relief he seeks would require Coinbase to change the manner in which it discloses its prices and fees to all customers on its Simple Trade platform. If Khan can prove his substantive claims, the injunctive relief he seeks under the UCL and FAL would benefit the public as a whole, and for that reason he may pursue his claims in the superior court.

## IV.

In closing, Coinbase makes two final arguments as to why the FAA compels arbitration in this case, but neither need detain us long.

Coinbase contends the denial of its arbitration petition must be reversed because Khan failed to carry his burden under the FAA of showing that his claims are not suitable for arbitration. (Citing *Green Tree Financial Corp.-Ala. v. Randolph* (2000) 531 U.S. 79, 91.) However, this burden arises when a party is resisting arbitration of a claim the parties have agreed to arbitrate. (*McGill*, *supra*, 2 Cal.5th at p. 958.) In this case, because the parties did not agree to arbitrate claims for public injunctive relief—or to the extent they did, that agreement is unenforceable—the issue before us is not whether Khan's claims are suitable for arbitration. The issue is whether Khan seeks public injunctive relief, and under *McGill* this can be decided based solely on the complaint's allegations and requests for relief. (*Id.* at p. 958; see, e.g., *Kramer*, *supra*, 105 Cal.App.5th at p. 754.)

Coinbase also contends that this court must reverse the order denying its petition and compel Khan to arbitrate in order to avoid FAA preemption. In presenting this argument, Coinbase does not dispute that multiple appellate courts have recognized that "the FAA does not preempt *McGill*."

(*Kramer*, *supra*, 105 Cal.App.5th at p.755, fn. 8 [collecting cases]; see also *Hodges*, *supra*, 21 F.4th at p. 543.)  Instead, Coinbase argues the FAA preempts the trial court's order in this case because the order rests on an overly expansive conception of *McGill* in concluding Khan's complaint sought public injunctive relief.  Citing *Hodges*, *supra*, 21 F.4th at p. 547, Coinbase contends that this allegedly expansive reading of *McGill* crosses a line and triggers FAA preemption.

We reject this argument because we reject its premise.  The order we affirm today is a straight-forward application of *McGill* that also meets the standard the Ninth Circuit articulated in *Hodges*.  We do not hold that all requests for injunctive relief under the consumer protection statutes seek public injunctive relief.  We simply hold that Khan's complaint seeks public injunctive relief under the principles elucidated in *McGill*.  We are bound to follow Supreme Court precedent and do so here in rejecting Coinbase's various claims of error.

## DISPOSITION

The order is affirmed.  Respondent may recover costs on appeal.


TUCHER, P. J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.


*Kahn v. Coinbase, Inc.* (A172063)

22

Trial Court:   City & County of San Francisco Superior Court

Trial Judge:   Hon. Andrew Y. S. Cheng

Counsel:       The Norton Law Firm, Fred Norton, Esther Kim Chang, Josephine Petrick,
               and Matt Ohlheiser for Defendant and Appellant

               Mayer Brown, Archis A. Parasharami for Chamber of Commerce for the
               United States of America, as Amicus Curiae on behalf of
               Defendant and Appellant

               Kessler Topaz Meltzer & Check, Jennifer L. Joost, Joseph H. Meltzer,
               Melissa L. Yeates, Jordan E. Jacobson, Ethan J. Barlieb,
               Matthew Macken; Joseph Hage Aaronson, Gregory P. Joseph,
               Mara Leventhal, Christopher Stanley, and Benjamin A. Taylor
               for Plaintiff and Respondent